[No. 2283.]

WILLIAM WASHINGTON *v.* THE STATE.

1. PERJURY.—INDICTMENT for perjury which alleges that the false statement was material to the issue on trial is sufficient, without alleging the facts which show the materiality of the same. See the statement of the case for an indictment *held*-sufficient to charge the offense of perjury.

2. SAME.—Perjury may be assigned upon a false statement affecting only a collateral issue, as that of the credit of a witness.

3. SAME—CHARGE OF THE COURT.—Omission to charge the jury in a perjury case that a conviction for that offense cannot be had unless upon the testimony of at least two credible witnesses, or one credible witness corroborated strongly by other evidence, is fundamental error.

APPEAL from the District Court of Bexar. Tried below before the Hon. G. H. Noonan.

A term of five years in the penitentiary was the term assessed against the appellant, upon his conviction for perjury, under an indictment, the charging part of which reads as follows:

"* * * * that William Washington, on the thirteenth day of the month of May, in the year of our Lord 1886, in said county of Bexar and State of Texas, in the District Court of said county, then in session, and of which said court George H. Noonan was then and there the legally qualified judge, there was pending a certain criminal judicial proceeding, wherein the State of Texas was plaintiff and one Jack Green was the defendant, wherein the said Jack Green was duly and legally charged by indictment with having, on the fourteenth day of June, A. D. 1885, in said county of Bexar and State of Texas, committed the offense of theft from the person of one Bodo Meyer, by then and there fraudulently and feloniously and privately stealing, taking and carrying away from the person and possession of the said Bodo Meyer nine silver dollars of the current silver coin of the United States of America, each of the value of one dollar, and all of the total aggregate value of nine dollars, without the knowledge or consent of him, the said Bodo Meyer, the money and property of him, the said Bodo Meyer, and with the fraudulent and felonious intent to deprive the said owner of the value thereof, and to appropriate the same to the use and benefit of him, the said Jack Green, contrary to the statute and against the peace and dignity of the State; and of which said judicial proceeding the said court then and there had jurisdiction, and wherein issue was then and there duly joined between the said State of Texas and the said Jack Green, before the said judge and jury, duly organized to try the said issue; and he, the said William Washington, did then and there personally appear before said court, and did then and there take his corporate oath, and was duly sworn as a witness in said cause, said oath being then and there duly administered to him by George R. Dashiell, the clerk of said court, who was then and there authorized by law to administer the same, and which said oath was required by law and was necessary for the ends of public justice; whereupon it then and there became and was a material inquiry before said judge and jury in the trial of said judicial proceedings, whether he, the said William Washington, had been sent by one Rhody

Thomas to the county jail of Bexar county, Texas, at any time
within two weeks after the fourteenth day of June, A. D. 1885,
as the bearer of a message from her, the said Rhody Thomas, to
the defendant in said judicial proceeding, telling the said defend-
ant in said judicial proceeding that she was not a witness for the
State in said judicial proceeding, and knew no fact connected
with the same; and thereupon it then and there further became
and was a material inquiry before said judge and jury in the
trial of said judicial proceeding, whether he, the said William
Washington, was confined in the city jail of the city of San
Antonio, Texas, as a prisoner, from the fourteenth day of June,
A. D. 1885, to the fifth day of July, A. D. 1885; and the said
William Washington did then and there, before said judge
and jury, upon the trial of said cause, under the sanction of
said oath, administered to him as aforesaid, wilfully and delib-
erately state and testify that she, the said Rhody Thomas, had
sent him, the said William Washington, to the county jail of
Bexar county, Texas, within two weeks after the said four-
teenth day of June, A. D. 1885, as the bearer of a message
from her, the said Rhody Thomas, to the said Jack Green,
the defendant in said judicial proceeding. telling the said de-
fendant that she, the said Rhody Thomas, was not a witness
for the State in said judicial proceeding, and knew no fact
connected with the same, and that he, the said William Wash-
ington, was not confined in the city jail of the city of San
Antonio as a prisoner for any time after the said fourteenth day
of June, A. D. 1885, and which said statement was material to
the issue in said cause; whereas, in truth and in fact, he, the
said William Washington, has not been sent by her, the said
Rhody Thomas, to the county jail of Bexar county, Texas, at
any time within two weeks after the fourteenth day of June,
A. D. 1885, as the bearer of a message from her, the said Rhody
Thomas, to the said Jack Green, telling the said Jack Green she
was not a witness for the State in said judicial proceeding, and
knew no fact connected with the same; whereas, in truth and in
fact, he, the said William Washington, was confined in the city
jail of the city of San Antonio, Texas, as a prisoner, from the
fourteenth day of June, A. D. 1885, to the fifth day of July, 1885,
which said statement so made by the said William Washington,
as aforesaid, was wilfully and deliberately false, and the said
William Washington knew the same to be false when he made
it; contrary," etc.

George R. Dashiell, clerk of the district court of Bexar county, Texas, was the first witness for the State. He produced the records of the district court, and under the proceedings of the court had on the thirteenth day of May, 1886, he read the proceedings of the trial of Jack Green for the robbery of Bodo Meyer, the verdict of the jury declaring the guilt of the said Green, and affixing his punishment at two years in the penitentiary, and the final judgment of the court based upon the said verdict. Witness testified that, as clerk of the said court, he administered the oath to the defendant as a witness on behalf of Green, and immediately left the court room, and knew nothing about the testimony of the defendant on the trial of the said Green.

District Attorney George Paschal testified, for the State, that he represented the State on the trial of one Jack Green for the theft of money from the person of one Bodo Meyer, which trial was had on the thirteenth day of May, 1886. The defendant testified on that trial as a witness for the said Green, and one Rhody Thomas testified as a witness for the State. The latter testified that she saw the said Jack Green and the said Bodo Meyer, together with others, at the Washington saloon, on the night that the robbery of Meyer was alleged to have been committed; that she asked Jack Green to treat, and that he declined upon the plea that he had no money; that Green and Meyer, who knew each other well, drank several times together after she asked Green to treat, and he declined for the reason stated, and that after a time Green went to a point behind a privy in the rear of the said saloon, and put something into his pocket; that when Green returned to the saloon she asked him to treat, and that he thereupon produced some money and treated. On her cross examination, the said Rhody Thomas was asked whether she did or not, in the month of June, 1885, within ten days or two weeks after the arrest of the said Green upon the charge of stealing from the person of the said Meyer, tell the defendant, William Washington, to go to the Bexar county jail and tell Jack Green that she, the said Rhody Thomas, was not a witness for the State against him in the said case, and that she knew nothing about the case. To that question the said Rhody Thomas replied: "I did not tell the defendant, William Washington, anything about Jack Green or his case, for at that time William Washington was confined in the county jail."

When the defendant was called to the stand as a witness for

the said Jack Green, he testified that within ten days or two weeks after the arrest of Jack Green, Rhody Thomas told him to go to the county jail of Bexar county and tell Jack Green that she was not a witness against him, and that she knew nothing about his case. The defendant testified, on that trial, it was in the month of June, 1885, within ten days after the fourteenth day of the said month, when he was instructed by the said Rhody to go to the jail and deliver the message stated to the said Green, and that he remembered the time from the fact that it occurred about emancipation day, the night of which day he, defendant, spent attending a ball at Krisch's hall. The defendant denied in his said testimony that he was in the city jail of San Antonio on June 19 and July 4, 1885. He was introduced to impeach the testimony of the State's witness, Rhody Thomas, and his evidence was material to the issue then joined between the State and the said Green.

Cross examined, the witness testified that the defendant did not, as a witness on the trial of the said Green, testify that he was not in the city jail of San Antonio at any time in June, 1885. On the contrary, he testified that he was released from the said jail on the very day that Green was arrested for the theft of the money from Meyer, and that he was requested by the said Rhody Thomas, within the next ten days, or about emancipation day, to go to the county jail and deliver the message to Green as stated.

C. F. Russi, clerk of the police court of the city of San Antonio, Texas, testified, for the State, that the defendant, William Washington, was arrested for vagrancy on the tenth day of June, 1885, was tried and convicted on the same day, and, in default of ten dollars fine assessed against him, was committed to the county jail for thirty days. He was released from custody on the fifth day of the following month—July 1885. He was not out of the city jail from the tenth day of June until the fifth day of July, save on one or two occasions, when he was taken from the said jail and brought back to it by Captain Hughes.

Rhody Thomas testified, for the State, that she was a witness for the State on the trial of Jack Green for the theft of Meyer's money at the Washington saloon. The witness was at the said saloon with Meyer and Green when Green took the money from Meyer. With reference to the occurrences at that saloon on the night of the said theft, she testified on this trial substantially as, according to the testimony of District Attorney Paschal, she had

testified on the trial of Green. She denied that she, at any time or place, told defendant to go to the county jail and tell Green that she was not a witness against him, and knew nothing about the robbery. On the contrary, she could not have sent such a message to Green, because she was the only witness to the theft, and on the very day after it occurred she reported the theft to Officer Hughes, and on the same day, June 15, she was taken before the grand jury and told all she knew about the theft. On the following day, June 16, she was taken sick, and was confined to her bed for three months. Besides, the defendant was in the city jail, or "bat cave," when he claimed to have been sent with the purported message from witness to Green.

Cross examined, the witness testified that defendant was not at the Washington saloon on the night of the theft of the money from Meyer by Green. The witness never spoke to defendant about Green's case until long after his, defendant's, release from the "bat cave," when, in her own room, she advised the defendant to refrain from swearing on Green's trial that she sent him with the message stated to the city jail, and by so refraining to keep himself out of trouble.

Captain Hughes testified, for the State, that he took defendant out of the city jail twice during his confinement, and returned him to the city jail. Defendant did not see or speak to Rhody Thomas on either of those occasions. According to this witness, the defendant testified on Green's trial substantially as stated by the witness Paschal.

T. D. Finucane testified, for the State, that he was a member of the jury on the trial of Green for the theft of Meyer's money. He recited the testimony of Rhody Thomas and the defendant on that trial, substantially as did the witness Paschal.

The motion for new trial assailed the verdict as unsupported by law or evidence.

No brief for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

Willson, Judge. It is sufficient allegation, in an indictment for perjury, that the alleged false statement was material to the issue on trial, without setting out the facts which show its materiality. (Massie v. The State, 5 Texas Ct. App., 81; Mattingly v. The State, 8 Texas Ct. App., 345.) In this case the indictment

contains the general allegation of materiality, and in all respects we hold the indictment to be a good one.

As to the materiality of the alleged false statements, we think it was made apparent by the evidence. These false statements were adduced on the trial of Green for the purpose of affecting the credibility of the State's witness Rhody Thomas, and were calculated to have the effect to impeach or at least cast suspicion upon her testimony. It seems to be well settled that perjury may be assigned upon a false statement affecting only a collateral issue, as that of the credit of a witness. Such statement is material to the principal issue. (2 Bish. Cr. Law, secs. 1032–1038; 3 Greenl. Ev., sec. 195; 2 Whart. Cr. Law, sec. 1278.)

There was no error in any of the rulings of the court complained of in relation to the admission of evidence offered by the State. We think the evidence was all admissible.

It is objected to the charge of the court that it fails to instruct the jury in all the law of the case. This objection is well taken. This being a trial for perjury, it was incumbent upon the trial judge to instruct the jury that they could not convict the defendant except upon the testimony of two credible witnesses, or of one credible witness corroborated strongly by other evidence, as to the falsity of the defendant's statement under oath. (Code Crim. Proc., Art. 746; Gartman v. The State, 16 Texas Ct. App., 215.) It was fundamental error to omit such instruction, and because of this error the judgment is reversed and the cause is remanded.

*Reversed and remanded.*