[No. 2361.]

JOEL PARTAIN v. THE STATE.

1. PERJURY—INDICTMENT.—In an indictment for perjury, it suffices directly to aver the materiality of the alleged false statement, or to allege facts which make its materiality apparent.

2. SAME—EVIDENCE.—The indictment alleging that the false statements were made upon the trial of one P., the trial court properly permitted the State to prove the proceedings had and the evidence delivered by the defendant upon that trial. Such evidence was admissible to show that the alleged false statements were made in a judicial proceeding, and that they were material to an issue in the said proceeding.

3. PRACTICE—VERDICT.—Incorrect orthography or ungrammatical language will not vitiate a verdict. Verdicts are to have a reasonable intendment and construction, and are not to be avoided unless from necessity originating in doubt of their import, immateriality of the issue or manifest tendency to injustice. Omiting to cross the "t" in the word guilty does not vitiate the verdict.

4. PERJURY—FACT CASE.—See the statement of the case for evidence *held* sufficient to support a conviction for perjury. Quære, whether, under the Code of this State, a conviction for perjury can be sustained on purely circumstantial evidence?

APPEAL from the District Court of Fannin. Tried below before the Hon. D. H. Scott.

The conviction in this case was for perjury, and the penalty assessed against the appellant was a term of five years in the penitentiary.

Joe Lewis was the first witness for the State. He testified that he and the defendant, on the fourteenth day of December, 1883, lived in the same neighborhood, in Fannin county, Texas, about four and one-half miles from the town of Ladonia. One John Webb was said to have been killed by one John Parker, at a circus performance in the said town of Ladonia, on the said fourteenth day of December, 1883. Witness and defendant went to the town of Ladonia on the said day. The witness and the defendant were on the show grounds on that day, but did not go into the tent to witness the performance. The show or circus tent was stretched at a point between three and five hundred yards distant from the square. The defendant had his horse on the show grounds, as did the witness, but the witness had left a

bucket at a store in town. He and defendant had agreed to ride home together. Witness told defendant to wait for him at the show ground until he could ride into town and get his bucket. Accordingly, witness rode to town, got his bucket, returned to the show ground, joined the defendant, and the two rode home together, traveling a distance of three miles to where they separated to go to their respective homes. Webb was not shot while witness and defendant were together at the show grounds. No disturbance of any kind occurred while they were there together. Witness saw nobody coming out of the tent, but saw a number of parties going in. He heard no shot after he and defendant left the grounds. Defendant told him nothing about Webb being shot, and if Webb was shot during the few minutes the witness was riding from the ground to town after his bucket and back, witness heard nothing about it.

County attorney B. N. Woodson was the next witness for the State. He testified that defendant was sworn as a witness upon the trial of John Parker for the murder of John Webb, and testified upon that trial substantially as his testimony is set out in the report of that case, commencing on page 72 of the eighteenth volume of the Texas Court of Appeals Reports.

M. Cunningham testified, for the State, that at about one o'clock, p. m., on the day that Webb was killed by Parker at the circus in Ladonia, he saw the defendant sitting on his horse, a few feet distant from and in front of the tent. He asked defendant if he was going into the circus. Defendant replied that he was not, but was going home. A few minutes later the witness saw Joe Lewis join the defendant in front of the tent, and saw the two ride off together towards their homes, and watched them until they had ridden at least a hundred yards in that direction. Witness then went into the circus, and remained until Webb was killed. The killing took place between three and half past three o'clock, p. m., two or two and a half hours after defendant and Lewis left, going in the direction of their homes. Witness was absolutely positive that an hour or an hour and a half elapsed after defendant and Lewis left before the shooting of Webb occurred. Witness did not see defendant again after he left the show grounds with Lewis.

The State next introduced the record of the proceedings upon the trial of Parker.

District clerk Blair testified that he administered the oath to

the defendant when he testified as a witness on the trial of Parker for the murder of Webb.

C. L. Gallaway testified that he was of counsel for Parker on his trial for the murder of Webb. He rested Parker's case on self defense, and placed the defendant on the stand as a witness to support that defense. Defendant was sworn, and testified as a witness in that case.

Jim Cook testified, for the State, that he lived in Fannin county, in the same neighborhood in which defendant and Joe Lewis lived. The defendant then lived on Truss's farm. Witness was in Ladonia on the day that Webb was killed by Parker. He went home about thirty minutes after the killing occurred, traveling the main and usually traveled road, which passed by Truss's. He neither met nor overtook the defendant on that trip. He stopped at defendant's house on the Truss farm, saw, and talked with the defendant for awhile. Defendant spoke of the trouble in town between Merrill and some wire fence cutters. Witness replied that something worse than that had occurred. Defendant asked him what it was. Witness told him that Parker had killed Webb. Defendant said nothing in reply, but appeared very much surprised. Wallace and Monk Partain were present. Witness did not see the defendant at or about the place of the killing of Webb when it occurred.

Cross examined, witness said that he was not in the show tent and did not see the shooting. He was on the outside when it occurred. He immediately rode to town, meeting Wallace Partain en route. He rode back to the ground with Wallace and soon went home via Truss's farm and defendant's house. He did not detail the particulars of the killing to the defendant.

Tom Williams testified, for the State, that some time before the killing of Webb on December 14, 1883, he saw the defendant get on his horse in Ladonia and ride off, saying that he was going home. Two hours then elapsed before Webb was killed.

G. W. Truss testified, for the State, that he lived in Fannin county, about four and a half miles distant from Ladonia. About the middle of the afternoon on the day that Webb was killed, defendant rode up to witness's house from the direction of Ladonia, and remarked that "they were having thunder up there." Three quarters of an hour later, Jim Cook came along from Ladonia. Defendant then lived on the witness's farm.

Cross examined the witness said that he went to defendant's house about dark on that day. Something was said about the

killing of Webb, when defendant claimed to have witnessed the shooting. His statement to witness about the shooting was substantially the same as his subsequent testimony on the trial of Parker. The State closed.

John Litteral was the first witness for the defense. He testified that he saw the defendant sitting on his horse between the ticket wagon and the tent entrance, after the show began, on the day Webb was killed. This was but a short time before the killing. He did not see him at the time of the killing. He saw Jim Cook leave the show ground, going towards town, after the killing of Webb.

Wallace Partain, the brother of the defendant, testified that he was in the town of Ladonia when Webb was killed by Parker. He and Ed Wishard were standing on the east side of the square about the time the killing occurred. In walking from that point to Haden's store, on the west side of the square, with Wishart, he saw Jim Cook riding towards the show grounds, four hundred yards distant. About fifteen minutes later, one of the Eastman boys came to town and reported the killing of Webb, and witness and Wishart went immediately to the circus tent. En route they met Jim Cook returning to town. Witness went to his brother's house on that night, but nothing was said about the killing of Webb.

Defendant's wife testified, for the defense, that she was at Truss's house when Cook came from Ladonia on the day that Webb was killed. She heard Cook say that Webb was killed, but did not hear him relate the circumstances of the killing. Returning home about dusk, she found her husband arrived from town. He then told her about the killing of Webb, relating the particulars substantially as he detailed them on the trial of Parker. He said further that he rode home with Lewis and said nothing to Lewis about the killing. Witness and defendant then agreed to say nothing about defendant's witnessing the killing, as court convened during the busy part of the year, and he did not want to be taken from his work to testify. Defendant, however, related the circumstances of the killing to Mr. Truss on that same night.

Ed Eastman testified, for the defense, that he was at the circus when the shooting took place. He passed out of the tent and rode immediately to town, where, in front of Haden's store, he told of the killing to a crowd composed of several persons. Fifteen minutes had then elapsed since the shooting.

The motion for new trial raised the question discussed in the opinion.

*Taylor & Galloway*, filed an able brief and argument for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

WILLSON, JUDGE. An indictment for perjury is sufficient, in respect to the materiality of the alleged false statement, if it directly avers the materiality, or if it alleges facts which make the materiality apparent. (Massie v. The State, 5 Texas Ct. App., 81; Mattingly v. The State, 8 Texas Ct. App., 345.) In this case there is a direct averment in the indictment that the statements upon which perjury is assigned were material. In all respects the indictment is in accordance with approved forms, and the court did not err in overruling defendant's motion in arrest of judgment based upon supposed defects in said indictment.

It was not error to permit the prosecution to prove the proceedings in the trial of Parker and the testimony delivered by defendant on that trial. Such proof was warranted by the allegations in the indictment, and was relevant and admissible for the purpose of showing that the alleged false statements were made in a judicial proceeding, as alleged in the indictment, and that said statements were material to an issue in the trial of said proceeding.

It was clearly proved that the alleged false statement was material to an issue in the Parker case. An issue in that case was, whether or not Parker killed Webb in self defense. Upon that issue defendant testified to facts which tended strongly to prove that Parker acted in self defense. He testified that he was near when the killing occurred, and saw a portion of the difficulty, and then detailed what he saw of said difficulty. His statement that he was present on the occasion, and in a position which enabled him to see the acts about which he testified, was certainly material; for, if he was not present, or, if present, was not in a position that he could see said acts, his statement that he did see them, and his testimony as to what he saw, would be manifestly false and of no weight whatever. It might be that the prosecution could in no other way disprove his testimony supporting Parker's plea of self defense than by showing that

said witness was not present at the time and place of the killing, or, if present, that he was not in a position that he could possibly have seen what he testified he did see.

We agree with the learned trial judge that the evidence of the prosecution establishing the guilt of the defendant is not wholly circumstantial. There is the positive evidence of more than one witness that, at the time Parker shot Webb, the defendant was not at the place of the shooting, but had gone to his home, some distance in the country. This positive testimony is corroborated strongly by circumstantial evidence. Therefore, as there is. direct evidence proving the falsity of defendant's statements in regard to his presence and position at the time and place of the killing, it is not necessary that we should consider and determine the interesting question presented and argued by counsel for defendant, to wit: Can a conviction for perjury be sustained, under our statute, when the evidence proving the falsity of the statement upon which the perjury is assigned is wholly circumstantial.

As to the charge of the court, it is full, fair and liberal to the defendant, presenting the whole law of the case correctly; and hence it was not error to refuse the special instructions requested by the defendant.

There is evidence sufficient to support the conviction, and the objection made to the sufficiency of the verdict, that it does not find the defendant guilty, but finds him "guilly," is not well taken. (Curry v. The State, 7 Texas Ct. App., 91; McMillan v., The State, *Id.*, 100; Walker v. The State, 13 Texas Ct. App., 618.)

The judgment is affirmed.

*Affirmed.*

Opinion delivered October 27, 1886.