### John Oliver v. State.

#### No. 2199.   Decided January 15, 1913.

**1.—Occupation—Selling Intoxicating Liquors—Local Option—Loan.**

A loan of whisky to be returned in kind is a sale under the local option law.

**2.—Same—Insufficiency of the Evidence—Occupation.**

Where, upon trial of following the occupation of selling intoxicating liquors in local option territory, the evidence was insufficient to show that the defendant was pursuing the occupation of selling whisky in local option territory, the same could not be sustained, although defendant may have made a couple of sporadic sales.

**3.—Same—Charge of Court—Definition of Occupation.**

Where, upon trial of pursuing the occupation of selling intoxicating liquors in local option territory, the court's charge did not give a correct definition of such occupation, the same was reversible error.

**4.—Same—Distinct Offenses—Local Option—Occupation.**

The offense of selling intoxicating liquors in local option territory is a distinct offense from that of following the occupation of selling such liquors in local option territory, which carries a much greater punishment than the first offense, and a mere sporadic sale of liquors does not constitute an occupation as defined under the law, and a shipment of some intoxicating liquor to the defendant long after the alleged transactions occurred is not sufficient.

Appeal from the District Court of Upshur.   Tried below before the Hon. R. W. Simpson.

Appeal from a conviction of unlawfully pursuing the occupation of selling intoxicating liquors in local option territory; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Warren & Briggs,* for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted of pursuing the occupation and engaging in the business of selling whisky in local option county.

The evidence is very brief and practically without conflict to the effect that on or about the 9th of February, 1912, a witness named Wright bought of appellant 25 cents worth of whisky under the following circumstances: He says: "I met the defendant coming across the railroad in his delivery hack, which was his occupation, that is, to drive the delivery hack.   He told the defendant he wanted to borrow

half a pint of whisky. The defendant told him all right and he and the defendant went to defendant's house and drew a half pint of whisky out of a jug and put it in a half pint bottle. I stated to the defendant at the time that I had ordered some whisky and if my whisky came I would pay it back to him, but if he got in a hurry for the whisky before mine came, I would leave him a quarter, or twenty-five cents, which I did, and he could take that money and order some more whisky. About two weeks after this I met the defendant again on his delivery hack and told him my whisky had not come and that I wanted to borrow another half pint. He said all right and we went down to his house and he got the whisky for me. I don't know whether he got it out of a jug or not; anyway, I left another quarter and told him to order him some more whisky if mine didn't come. My whisky never did come or hasn't come yet. This is all I know about the case." On cross-examination he says: "I did not buy any whisky from Pig or John Oliver. I just borrowed two half pints until mine come and left the money with him to order some more if I didn't get mine in time. My whisky never did come and I never paid him back."

The conclusion from these facts is, under former cases these two transactions ought to be regarded as sales and violative of the local option law. A deputy sheriff named Howell also testified he "looked through a knot hole" in a door in what was known as a warehouse of Sheppard & Kelley in which they some time stored grain and hay, and saw appellant drink out of a half pint bottle. The witness says he went in there and got the bottle from under the floor. The brand of this whisky was "Kentucky Tavern." He says he got some wrappers from under this floor, but only one pint of whisky. This is all the evidence this witness gave, or all he knew about the matter. This was not a sale. This particular house, known as Sheppard & Kelley's old warehouse, was also used as a general water closet. The second pint of whisky the witness Wright got from appellant was about two weeks after the first transaction, which would throw it approximately about the 23rd of February. An express agent named Beck testified that his books showed defendant got a jug of whisky on February 29th from the Goodman Liquor Company of Waco, Texas, and the following March he got twenty-four pints. This is all that appellant ever received through the express office. Another witness testified that the warehouse mentioned was used a good deal as a public closet. The doors were never shut or seldom ever shut in the day-time; any one could go in and out of it whenever they desired. This is about the case, except it was agreed local option was in effect in Upshur county.

Under this state of facts this conviction ought not to have occurred for engaging in the business of selling intoxicants. There were but two sales shown or attempted to be shown, one about the 9th of February, and the other about the 23rd of February. All whisky that is shown to have been shipped to appellant was subsequent to the sales

mentioned, and that amounted to a jug of whisky on the 29th of February, and 24 pints some time in March. It is also shown that appellant is a man who drank a good deal.

The court instructed the jury in regard to the question of what it took to constitute engaging in the business as follows: "To constitute engaging in the business or pursuing the occupation of selling intoxicating liquor the proof must show that the defendant kept in his possession intoxicating liquor for sale, and that he had intoxicating liquor on hand; and also that he made two sales of intoxicating liquor during the time he is charged with having engaged in the business or pursued the occupation, if any." This is the only definition, as we understand, the court gave. He further charged the jury that in order to constitute a violation of the statute it must appear that the defendant engaged in the business or pursued the occupation of selling intoxicating liquors about the time charged in the indictment. and that he did about the time charged make a sale of intoxicating liquor to Albert Wright. The definition, however, given is the one quoted. This is not a correct definition. A man may keep on hand any quantity of whisky or intoxicants, or have same in his possession and not be engaged in the business of selling. To follow the occupation or engage in the business of selling intoxicating liquor means that the party must be engaged in that business either as his principal business, or in some way as a business proposition. It does not mean that because he has whisky in his possession and makes a couple of sporadic sales, that that would constitute following the business. Under the statute there are two things which must occur in order to violate the statute in question: the first is, the party must engage in the business or pursue the occupation of selling intoxicating liquors in local option territory, and, second, he must make at least two sales in pursuance of that business or occupation. This Act was passed by the legislature in 1909, as was another statute which makes it a penitentiary violation of the law to sell intoxicants in local option territory while not pursuing the business. The two Acts were passed by the same body and went into effect the same day. The Legislature was drawing or intended to draw a distinction between a violation of the local option law by making a single sale or sporadic sales, and the selling of liquor in connection with following that line of business or engaging in that occupation. The punishment for violating the local option law is not less than one nor more than three years, while in pursuing the business it is not less than two nor more than five years. So the Legislature intended to punish more severely the offense of pursuing the business of selling intoxicants, and it shows further that body was drawing a distinction and making different offenses of the two conditions or state of facts. It would be well enough for our trial courts to keep this distinction in mind. A man who violates the local option law by making sporadic sales is to be punished for that offense. It is only when selling intoxicants in local option territory in pursuance of the

party's engaging in that business or following that occupation that the higher punishment is to be enforced. A man may keep any amount of intoxicants on hand, and may occasionally sell a bottle of such intoxicants, without engaging in the business. He may keep only a small amount or may order it without keeping it on hand, and sell to parties and yet engage in the business. Wherever these questions come the distinction between engaging in the business or following the occupation and the sale in violation of the local option law under the other statute should be kept in mind and the jury properly instructed. The facts in this case do not justify the conviction. There is no attempt to show that defendant was engaged in the business, and even under the court's definition appellant had not violated the statute under which he was convicted. The only possible amount of whisky, under the facts, that could have been used against defendant as to quantity was twenty-four pints which were expressed to him in March, long after these transactions occurred, but there was no evidence offered that he was selling any of the twenty-four pints or even that he ever offered it for sale.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*