## Houston Jones v. The State.

### No. 3449.   Decided February 24, 1915.

#### Rehearing denied March 31, 1915.

1.—Perjury—Indictment—Precedent.

Where, upon trial of perjury, the indictment followed approved precedent, there was no error in overruling a motion to quash.

2.—Same—Materiality of Testimony—Indictment.

Where, upon trial of perjury, the indictment alleged among other things that the alleged perjured testimony consisted in the defendant's denial that the party who was investigated by the grand jury for pursuing the business of selling intoxicating liquors in prohibition territory, had possession of such liquor, the same was a material allegation, and there was no error in overruling a motion to quash.

3.—Same—Possession of Intoxicating Liquors—Perjury.

Where the alleged perjured testimony was given before the grand jury, and consisted in the denial by the defendant that the party who was prosecuted for following the occupation of selling intoxicating liquors in local option. territory had in his possession intoxicating liquors, this was a material inquiry and formed the basis for a prosecution for perjury, as such possession was material evidence before the grand jury in said investigation. Following Wagner v. State, 53 Texas Crim. Rep., 306, and other cases.

4.—Same—Rule Stated—Material Testimony.

False testimony is material not only when directly pertinent to the issue, but also if it tended to augment or diminish damages or to import greater credit to substantial parts of the evidence. Following Lawrence v. State, 2 Texas Crim. App., 479.

**5.—Same—Rule Stated—Basis of Perjury.**

Perjury may consist not only in false and corrupt testimony relative to the main facts immediately at issue, but also in such testimony relative to material circumstances which tend to 'prove that issue and irrespective of the truth or falsity of the main fact at issue. Following Bradberry v. State, 7 Texas Crim. App., 375.

**6.—Same—Rule Stated—Material Testimony.**

It is not necessary that defendant should have sworn falsely as to every matter of fact material to be proved upon the trial; if his false testimony be material as to any one fact, it is sufficient. Following State v. Lindenburg, 13 Texas, 27, and other cases.

**7.—Same—Rule Stated—False Statement**

If the false statement is alleged to be material or so appears from the facts stated, it will be deemed material if it could. have influenced the tribunal in which it was made. Rahm v. State, 30 Texas Crim. App., 310, and other cases.

**8.—Same—Rule Stated—Allegation of Material Statement.**

The materiality of the alleged false statement is sufficiently alleged if it is simply averred that it was material to the issue. If such averment is made, the indictment need not show how the testimony became material. Following Massie v. State, 5 Texas Crim. App., 81, and other cases.

**9.—Same—Rule Stated—Province of Court.**

It is the province of the court, and not the jury, to pass upon the materiality of the alleged false statement. Following Dunnahoe v. State, 14 Texas Crim. App., 638, and other cases, and, therefore, it was not error to so instruct the jury.

**10.—Same—Sufficiency of the Evidence.**

Where, upon trial of perjury, the testimony .was sufficient to sustain the conviction under a proper charge of the court, there was no reversible error.

**11.—Same—Continuance—Immateriality of Testimony.**

Where the second application for continuance showed that the alleged absent testimony was wholly immaterial, there was no error in overruling same.

**12.—Same—Evidence—Immunity—Public Policy.**

Neither the district attorney nor anyone else had the power or authority to make any binding agreement with the defendant that he would not be prosecuted for perjury committed in his testimony before the grand jury before it was given; such agreement would be against public policy and void, and there was, therefore, no error in striking out defendant's plea setting up this promise of immunity.

**13.—Same—Evidence—Foreman of Grand Jury.**

Where the perjury was based upon the testimony of defendant before the grand jury, to the effect that he did not get any intoxicating liquors from a certain party and that said party did not have any such intoxicating liquors in his possession, there was no error in permitting the foreman of the grand jury to testify that defendant so testified before the grand jury, and to show this fact also by the district attorney.

**14.—Same—Evidence—Witness's Response.**

Upon trial of perjury, there was no error in admitting pertinent testimony which although not in direct answer to the question put, was admissible.

**15.—Same—Evidence—Hypothetical Questions.**

Where the alleged hypothetical question was not based on the testimony in the case, there was no error in sustaining an objection thereto.

**16.—Same—Evidence—Admission of Defendant.**

Upon trial of perjury, where defendant testified himself and denied that he had made a statement, or a statement was made in his presence and hearing by another, that there was no use to swear a lie about it because the officers had seen him get the liquor in question, there was no error in permitting the State to impeach his testimony and show by his implied admissions that he testified falsely on the original trial.

**17.—Same—Evidence—Foreman of Grand Jury.**

Upon trial of perjury, there was no error in permitting the foreman of the grand jury to testify that the defendant was duly sworn before that body, and the nature of the investigation which was pursued by them.

**18.—Same—Charge of Court.**

Where, upon trial of perjury, the court gave a full, clear and apt charge on the facts, there was no error in refusing special requested charges.

**19.—Same—Circumstantial Evidence—Charge of Court.**

Where, upon trial of perjury, the evidence was direct, there was no error in the court's refusal to charge on circumstantial evidence. Following Ballard v. State, 71 Texas Crim. Rep., 168, and other cases.

**20.—Same—Material Inquiry—Selling Intoxicating Liquors.**

Where, upon trial of perjury, the defendant was charged with giving false testimony before the grand jury, in that he denied that the party who was prosecuted for pursuing the occupation of selling intoxicating liquors in local option territory delivered to him such intoxicating liquors or had the same in his possession; it was material to show on the trial for perjury that this testimony was false and that said party did have in his possession at the time in question such intoxicating liquors. Following Oliver v. State, 68 Texas Crim. Rep., 414.

**21.—Same—Sufficiency of the Evidence.**

Where, upon trial of perjury, the indictment alleged that the defendant falsely testified before the grand jury that the party prosecuted for following the occupation of selling intoxicating liquors in local option territory did not deliver to defendant or have in his possession such intoxicating liquors, and the testimony for the State fully sustained such allegations, there was no reversible error under a proper charge of the court.

**22.—Same—Evidence—No Reversible Error.**

Where, as a matter of fact, the testimony objected to was not admitted on the trial, but if admitted, constituted no error, there was no reversible error.

Appeal from the District Court of Lamar. Tried below before the Hon. Ben H. Denton.

Appeal from a conviction of perjury; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Lattimore & Hutchison* and *Sturgeon & Ownby*, for appellant.—On question of insufficiency of the evidence and immateriality of testimony before grand jury: McCoy v. State, 43 Texas Crim. Rep., 609; Adams v. State, 29 S. W. Rep., 270; McAvoy v. State, 39 Texas Crim. Rep., 684; Bradberry v. State, 7 Texas Crim. App., 375; Yardley v. State, 55 Texas Crim. Rep., 486; Jernigan v. State, 43 id., 114; Rahm v. State, 30 Texas Crim. App., 310; Washington v. State, 22 id., 26;

Cravey v. State, 33 Texas Crim. Rep., 557; Garrett v. State, 37 id., 198; Wynne v. State, 60 id., 660; Crow v. State, 49 id., 103.

*C. C. McDonald,* Assistant Attorney General, and *R. T. Lipscomb,* District Attorney, for the State.—On question of immunity: Wilson v. State, 69 Texas Crim. Rep., 567, 154 S. W. Rep., 571.

On question of sufficiency of indictment: Bell v. State, 171 S. W. Rep., 239; Hutcherson v. State, 33 Texas Crim. Rep., 67; Scott v. State, 35 id., 11; Martin v. State, 33 id., 317; Pyles v. State, 47 id., 435; Davidson v. State, 22 id., 372; Maroney v. State, 45 id., 524.

On question of court's failure to charge on circumstantial evidence: Womack v. State, 170 S. W. Rep., 139.

PRENDERGAST, PRESIDING JUDGE.—Appellant was convicted of perjury and assessed the lowest punishment.

The alleged false testimony was given before the grand jury on or about October 10, 1913. The indictment followed the statute and the standard forms therefor which have many times been held sufficient. It alleges that appellant appeared before the duly organized grand jury and was sworn by the foreman thereof as required by law. Whereupon, it then and there became and was a material inquiry before said grand jury and necessary for the due administration of the criminal laws of the State of Texas, in Lamar County, and the ends of public justice, whether Lee Shoulders, about September 20, 1913, in said county, engaged in and pursued the occupation and business of selling intoxicating liquors in violation of law, and while engaged in and pursuing said occupation and business, made more than at least two sales of such liquor to Dollie Carter about said date in violation of said law; and properly averred that the liquor prohibition law was then and theretofore in force in said county; that on or about October 10, 1913, appellant did deliberately, wilfully and corruptly testify and say, in substance and effect, that Lee Shoulders did not have in his possession and did not deliver to him, the said Houston Jones, intoxicating liquors on or about September 20, 1913, in said county. The indictment then further properly alleges that appellant then well knew said Shoulders did have in his possession and did deliver to him intoxicating liquors at said time and said statement so made by him was deliberately and wilfully made and was deliberately and wilfully false, as appellant then and there well knew, and that it was a material inquiry before said grand jury whether said Shoulders in said county on or about said date had in his possession intoxicating liquors and delivered the same to appellant.

By motion to quash said indictment, and otherwise, appellant contends that the alleged false testimony by him was wholly immaterial and could not be the basis of perjury; that in the grand jury's investigation of whether Shoulders was engaged in or pursued the business of selling intoxicating liquors in said prohibition territory, it could not

be a material inquiry of whether he, at that time, had such liquors in his possession or delivered any such to appellant. It is unnecessary to state his other contentions, for they all hinge around the question as stated above.

Of course, if said testimony was wholly immaterial it could not be made the basis of perjury for the statute expressly so enacts. (P. C., art. 309.)

There can be no question but that it was the duty of the grand jury to investigate whether Shoulders, or any other, in said county, was engaged in the unlawful business or occupation of selling intoxicating liquors as denounced by the statute. It may be, too, that, as a matter of fact, upon full investigation by the grand jury it might be determined that said Shoulders was not guilty of such crime, yet, that was the very question the grand jury was investigating and they had the right and it was their duty to ascertain any material fact from any witness, that would tend to show this. Of course, no one could engage in such business or occupation without getting and having in his possession from time to time more or less intoxicating liquor. And if appellant received from Shoulders at said time such liquor it would tend to show necessarily that he had such liquor in his possession at the time; otherwise, he could not have delivered it to appellant. Since the rendition of the opinions in Wagner v. State, 53 Texas Crim. Rep., 306; Starbeck v. State, 53 Texas Crim. Rep., 192; Myers v. State, 52 Texas Crim. Rep., 558; Southworth v. State, 52 Texas Crim. Rep., 54; Field v. State, 55 Texas Crim. Rep., 524; Myers v. State, 56 Texas Crim. Rep., 222, this court has, uniformly and in a large number of decisions,—unnecessary to collate—held that in prosecutions for making a single sale of intoxicating liquors in prohibition territory, and in prosecutions for pursuing the business or occupation of engaging in such business, the fact that the accused has, about the same time, liquor in his possession is material evidence and can always be shown.

Judge White, in his Ann. P. C., sec. 329, lays down the following correct principles:

"False testimony is material not only when directly pertinent to the issue, but also, if it tended to augment or diminish damages or to import greater credit to substantial parts of the evidence. Lawrence v. State, 2 Texas Crim. App., 479. Perjury may consist not only in false and corrupt testimony relative to the main fact immediately at issue; but, also, in such testimony, relative to material circumstances, which tend to prove that issue, and irrespective of the truth or falsity of the main fact at issue. Bradberry v. State, 7 Texas Crim. App., 375. It is not necessary that defendant should have sworn falsely as to every matter of fact material to be proved upon the trial. If his false testimony be material as to any one fact, it is sufficient. State v. Lindenburg, 13 Texas, 27; State v. Webb, 41 Texas, 67. If the false statement is alleged to be material or so appears from the facts stated, it will be deemed material if it could have influenced the tribunal in which it was made. Rahm v. State, 30 Texas Crim. App., 310; Martin

v. State, 33 Texas Crim. Rep., 317; Williams v. State, 28 Texas Crim. App., 301. The degree of materiality is of no importance. Williams v. State, 28 Texas Crim. App., 301. It may' be material if it only affects a collateral issue, as that of the credit of a witness. Washington v. State, 22 Texas Crim. App., 26; Williams v. State, 28 Texas Crim. App., 301."

Mr. Branch, in his Criminal Law, section 650, page 417, correctly says: "The materiality of the alleged false statement is sufficiently alleged if it is simply averred that it was material to the issue. If such averment is made, the indictment need not show how the testimony became material. Massie v. State, 5 Texas Crim. App., 81; Adams v. State, 29 S. W. Rep., 270; Chavarria, 63 S. W. Rep., 312; Washington v. State, 22 Texas Crim. App., 26, 3 S. W. Rep., 228; Henry v. State, 43 Texas Crim. Rep., 176, 63 S. W. Rep., 642; Yardley v. State, 55 Texas Crim. Rep., 486, 117 S. W. Rep., 146; McAvoy v. State, 39 Texas Crim. Rep., 684, 47 S. W. Rep., 1000; Anderson v. State, '56 Texas Crim. Rep., 360, 120 S. W. Rep., 462; Scott v. State, 35 Texas Crim. Rep., 11, 29 S. W. Rep., 274; Johnson v. State, 34 Texas Crim. Rep., 555, 31 S. W. Rep., 397; Williams v. State, 28 Texas Crim. App., 301, 12 S. W. Rep., 1103; Partain v. State, 22 Texas Crim. App., 100, 2 S. W. Rep., 854; Jernigan v. State, 43 Texas Crim. Rep., 114, 63 S. W. Rep., 560."

Judge White again correctly says (sec. 328, Ann. P. C.) : "It is the province of the court and not the jury to pass upon the materiality of the alleged false statement. Donahoe v. State, 14 Texas Crim. App., 638; Jackson v. State, 15 Texas Crim. App., 579; Davidson v. State, 22 Texas Crim. App., 372; Washington v. State, 23 Texas Crim. App., 336; Smith v. State, 27 Texas Crim. App., 50."

So that the lower court did not err in overruling all of appellant's contentions on this subject and did not err in telling the jury as a matter of law in substance that such testimony was material to the said inquiry before the grand jury.

It was proven by Mr. Lipscomb, the district attorney, and, in effect, by Mr. Hancock, the foreman of the grand jury, and by Mr. Burnett, another grand juror, that appellant appeared before the grand jury and, after being duly sworn, gave the alleged false testimony before it. It was also clearly shown that said Shoulders occupied a building cut up into four rooms by two partition walls, one running lengthwise near, but not in, the center, and the other crosswise towards the back of the building. In the two rooms on the east, cut off by said lengthwise partition, he used and operated a restaurant, the kitchen in the rear and the tables and eating department in the front; that on the other side of the building he used the other two rooms for a barber shop. The evidence was clearly sufficient to show the lengthwise partition wall between these two back rooms was only about six and one-half or seven feet high from the floor, although some of the witnesses thought it was higher. All the other partitions did go to, or near the ceiling, which was some eighteen feet or more from the floor. On the east of

this building adjoining was a blacksmith shop, in the rear part of which was a swinging loft, or second story. In the partition wall between the blacksmith shop and the building so occupied by Shoulders, at or near the top, was a large crack or opening sufficiently large, as one of the witnesses said, for a man to crawl through. Ed Bell and John Collins, deputies sheriff of said county, climbed up on said swinging loft or second story in said blacksmith shop to watch, and through said crack or opening could see into the rear rooms of said barber shop and restaurant. They both testified positively that on the evening of September 20, 1913, when they were thus secreted and watching, they saw appellant alone come back into said rear barber shop room and call said Shoulders; that Shoulders went back to him in said room, and, Bell said, appellant told Shoulders he wanted a pint of whisky; that Shoulders went to a box in said room, got out the pint of whisky and then gave it to appellant; that the bottle had a red cross label on it; that when it was delivered to appellant he took a drink out of it, put the bottle in his pocket and then went back into the other part of the building; that they at once, as soon as they could, got down from their hiding place, went into said building, found appellant with said bottle of whisky in his pocket, showing some had been drank out of it—it was not full—took it, arrested him and took him to the courthouse.

Appellant denied Shoulders delivered to him said pint bottle of whisky on said occasion. He and some of his other witnesses testified one Barlow brought two quarts of whisky from Dallas the day before and left it at appellant's in the country to be kept for him. That the next day he was going to town and in Barlow's absence filled him a pint bottle and took it along to town with him. That before he got to town he gave Ryan a drink, and when they got to Shoulders' Ryan or Gray told him they wanted another drink. That they all three then went through Shoulders' barber shop into said back room, and both Ryan and Gray took a drink out of his bottle. That he himself did not then take a drink out of his bottle—he wanted it, but his doctor was treating him for kidney trouble and advised him not to use it. Gray swore not only he and Ryan then took a drink out of said bottle, but that appellant also did. Appellant, Ryan and Gray and two of Shoulders' barbers all testified Shoulders did not on said occasion go into said back room with, or while appellant was therein, and in effect that they did not see Shoulders deliver a pint of whisky to appellant. From all the testimony the jury were authorized to believe that if said parties went back into said back room and took a drink with appellant it was a different occasion when appellant went into said back room, called Shoulders therein, and while they two only were therein. Shoulders delivered said pint bottle of whisky to appellant and he then took a drink out of it, placed it in his pocket and that that was the bottle the officers found in his pocket and took from him, and it was not the bottle he claimed to have brought from home with him. At any rate all this was for the jury and they found against appellant, with ample evidence to sustain their finding.

Appellant made a motion for a continuance on account of the absence of Dollie Carter, who was sick and on that account could not attend the trial. His application seems to have been based on the assumption, and he so states therein, that said officers Bell and Collins would swear on the trial that they saw her on September 20, 1913, buy two bottles of whisky from said Shoulders in his said place of business. As a matter of fact, said officers, and neither of them, gave any such testimony, and there was no testimony from any other source to that effect or tending to that effect. In his motion for new trial on this ground he attaches the affidavit of said Dollie Carter, wherein she simply and solely swears she would testify, "that I did not on or about the 20th day of September, A. D. 1913, or at any other time buy any whisky from Lee Shoulders, nor did I ever see him sell any intoxicating liquors to anyone." So that her testimony was wholly immaterial and could have affected no question in this case. It is true the indictment alleged that the grand jury were investigating whether said Shoulders was engaged in the business or occupation of unlawfully selling intoxicating liquors and whether he made two sales of intoxicating liquors to said Dollie Carter. If there had been any testimony in this case to the effect that said Shoulders did make any such sales to her at such time, then her testimony would have been material and a different question would be raised. This was his application for a second continuance. Under the circumstances the court committed no error in overruling his motion for a continuance, nor in refusing him a new trial on that ground.

The record shows that on September 20, 1913, or immediately thereafter, when the officers took appellant to the courthouse, the county attorney examined him as a witness, presumably investigating to see if said Shoulders had violated the liquor laws, and from testimony which he thus gave before the county attorney, complaint was filed against him charging him with perjury; that he gave bond for his appearance before the District Court to await the action of the grand jury on this complaint against him; that when the grand jury convened on the first Monday in October he was summoned before it as a witness. He then went to his attorneys, laid the matter before them, and they undertook to see the district attorney as to whether or not he could be compelled or should testify before the grand jury. He and his attorneys claim, and so testified in effect, that the district attorney promised him immunity from said perjury charge if he would testify before the grand jury and tell the facts. The district attorney denied that he had promised him immunity or agreed not to prosecute him for perjury if then committed before the grand jury. Before this case was tried he filed a sworn plea setting up this promise of immunity. The State, through its district attorney denied and resisted the plea, and the whole matter was fought out by the testimony of the parties before the district judge, who, after hearing all the testimony, held, in effect, that the district attorney did not make such agreement and that if he did no court would approve it. We think it unnecessary to go into any lengthy

detail of this matter. It is sufficient to say that the appellant in this case was not indicted for any supposed perjury committed by him before said county attorney. He was indicted, as shown and alleged in the indictment, for what he falsely testified before the grand jury on October 10, 1913. The district attorney and no other had the power or authority to make any binding agreement with appellant that he would not be prosecuted for perjury committed in his testimony before the grand jury before it was given, and if he had made such agreement it would be contrary to public policy and void. It does not come under that class of authorities which authorizes the prosecuting officers to make an agreement with a party to turn State's evidence and testify to facts that might incriminate him in his prosecution against some other person. Such contracts by the State, through its prosecuting officers, are permissible and are always enforced, but, surely, even in a case of that kind, the State's officers could make no valid nor binding agreement whereby, in advance, they would agree not to prosecute him for perjury if he committed it in his testimony. The court, therefore, did not err in overruling his said plea and sustaining the State's motion to strike it out, nor did he err in refusing to permit his said sworn plea to be introduced in evidence before the jury.

The court did not err in permitting Mr. Hancock, the foreman of the grand jury, to testify that appellant testified before the grand jury that he did not get any intoxicating liquors down at Lee Shoulders' and that he said he didn't have any, over the objection by appellant that it was immaterial whether Shoulders had any intoxicating liquors in his possession, because it was not a violation of law to have such liquor in his possession, and it was an immaterial issue as laid in the indictment. Nor did the court err in overruling his objections to the testimony of Mr. Lipscomb, the district attorney, as to the said testimony of appellant before the grand jury on the same grounds. Appellant's objections seem to have been based on the mistaken idea, as we have shown, that in the said investigation pending before the grand jury the fact, if so, that said Shoulders had such liquor in his possession at the time was immaterial; such a fact, if so, was very material to the inquiry and investigation then being made by the grand jury.

No reversible error is shown when said Deputy Sheriff Bell, while being cross-examined by appellant to this question: "I am talking about the first time you saw it (the whisky)," to which the witness answered, "he taken a drink right when he bought it and put it in his pocket," which was objected to by appellant because the answer was not in response to his question and there was no allegation in the indictment that defendant bought any whisky from Shoulders and it was calculated to poison the minds of the jury against him. This testimony by this witness was pertinent testimony in the case. It may not have been in direct answer to the question but that would be no ground to exclude it. It would be a matter of comment before the jury of the manner and voluntary testimony of the witness.

Neither was any reversible error committed in the court's refusal to

permit appellant's witness Lindsey to answer a hypothetical question over the State's objection that the hypothetical question was not based on the testimony in the case. The witness by his own testimony shows that he knew nothing about the situation so as to qualify himself to testify to the hypothetical question, and the answer sought was merely his conclusion.

Appellant himself testified on the trial. For the purpose of impeaching and showing an implied admission, the State asked him if he did not go with another negro to said blacksmith shop, borrow a ladder, go up and look through the hole where the officers claimed they looked and at the time tell Mr. Stowe that he was charged with perjury and after coming down from looking through the hole if he didn't state to him that the officers claimed that they saw him, appellant, up there and that there· was no use to swear to a lie about it, that they could see him. He denied all this. The State then asked him if the man that was with him on said occasion didn't state to Mr. Stowe, in appellant's presence and hearing, that there was no use to swear a lie about it, that they could see him and that he didn't deny it. He denied this. The State then introduced the witness Stowe, who testified that upon said occasion he saw appellant in said blacksmith shop and that he got a ladder and climbed up to the swinging loft where the opening between said blacksmith shop and said Shoulders' place had been, and that when he came down he told the witness that he was the man charged with perjury. The State then asked Stowe if at that time the appellant or the man that was with him, in appellant's presence and hearing, made the statement that there was not any use to swear a lie about it, that the officers could have seen him. The witness answered that he didn't know whether these were the exact words or not, but that either the appellant himself or the other man said the officers could have seen what was going on. We think this evidence was admissible both to impeach appellant and as an implied, if not direct, admission.

Nor did the court err in overruling appellant's motion to strike out certain testimony purported to have been given by said Hancock, foreman of the grand jury.

Appellant had several objections to the court's charge and also requested several special charges. We have examined all these. The court's charge is full, clear and apt and submits everything that was necessary or proper to be submitted to the jury over appellant's complaints thereto. None of his special charges should have been given.

He lays particular stress on the point that he claims the court should have given a charge on circumstantial evidence. The law is too well settled in this State to need citation to the cases that it is only when .the testimony to establish an accused's guilt is wholly and solely circumstantial that it is necessary to give such charge. We think the testimony of the two officers, Bell and Collins, substantially stated above, was positive and direct and that no charge on circumstantial evidence should have been given. See sec. 813, White's Ann. C. C. P.; Ballard v. State, 71 Texas Crim. Rep., 168, 160 S. W. Rep., 92; Law

v. State, 71 Texas Crim. Rep., 179, 160 S. W. Rep., 98; Branch's Crim. Law, sec. 203.

We have carefully studied this record and all the questions raised by appellant. We have not thought it necessary to take up each question separately, though we have considered and passed on all of them. In our opinion there is no reversible error in this case and the judgment will be affirmed.

*Affirmed.*

### ON REHEARING.

#### March 31, 1915.

PRENDERGAST, Presiding Judge.—In his motion for rehearing appellant urges but two grounds:

One, "because the proof in this case absolutely fails to show the materiality of the matter assigned as perjury."

Two, because the court erred in holding there was no error in the trial court refusing to sustain his motion to strike out a certain part of S. H. Hancock's testimony.

1. In the submission of this case appellant's attorneys in their oral argument, and also in their brief herein, strenuously insisted that the purported false testimony of appellant before the grand jury was not material. We undertook to show in the original opinion, and we think we did, that the appellant's alleged false testimony was material, specifically so alleged in the indictment, and the allegations, in addition, showed that it was. Appellant again vigorously contends that the *proof* does not show it was material, although it was alleged to be. In other words, as he expresses it, that the *proof* "absolutely fails to show the materiality." We think he is clearly mistaken in his contention for the *proof* does show affirmatively the materiality of his false testimony. Appellant is right in his contention that it must not only be alleged to be material, but must also be *proven* to be material.

In every case where a party is charged by indictment with unlawfully engaging in the business or occupation of selling intoxicating liquors in prohibition territory one of the most material items of proof always is to show that about the time he is charged with this offense he then either received, or had in his possession, intoxicating liquors. Of course, the more frequent the receipt and the greater quantity shown to be in his possession the more strongly it might tend to prove that feature of the offense, yet, unquestionably it would be material to show that he had any in his possession however small the quantity might be. As said by Judge Davidson for this court in Oliver v. State, 68 Texas Crim. Rep., 414: "He may keep only a small amount or may order it without keeping it on hand and sell to parties, and yet engage in the business."

As shown in the original opinion, the indictment alleged that the grand jury were investigating whether or not Lee Shoulders was engaged in or pursued the occupation or business of selling intoxicating

liquors in violation of the prohibition law and appellant was before it as a witness and deliberately, wilfully and corruptly did testify that Lee Shoulders did not have in his possession and did not deliver to him intoxicating liquors on or about September 20, 1913, and that his testimony in this respect was knowingly and wilfully false. Mr. Lipscomb, the district attorney, after showing that he was present as such before the grand jury when appellant was before it, testified:

"At that time the grand jury had under investigation the question of whether or not Lee Shoulders was unlawfully engaged in and pursuing the business and occupation of selling intoxicating liquors in violation of law in Lamar County, Texas, after a local option election had theretofore been held in Lamar County prohibiting the sale of intoxicating liquors in Lamar .County, and after the result of that election had been declared and published and after the local option law was in effect in this county, and as to whether or not he had made more, at least, than two sales of intoxicating liquors, and had made two sales of intoxicating liquors to Dollie Carter about the 20th of September, 1913. Mr. S. H. Hancock was foreman of the grand jury and administered the oath to the witness Houston Jones ₒwhen he appeared before the grand jury to testify, and Houston Jones testified in substance before the grand jury, in answer to the questions, . . . that about the 20th of September, 1913, in Lamar County, Texas, that Lee Shoulders did not have in his possession any intoxicating liquors in Lamar County, and also further testified that Lee ˙Shoulders didn't, about the 20th day of September, 1913, deliver any intoxicating liquors to this defendant, Houston Jones."

Mr. Lipscomb was not only not disputed in any particular, but Mr. Hancock, foreman of the grand jury, and Mr. Burnett, another of the grand jurors, fully corroborated him.

Mr. Ed Bell, after showing that he and John Collins were in a position to see into the back room of Lee Shoulders' barber shop and did see therein on September 20, 1913, as shown in the original opinion, testified: "On that day I saw the defendant, Hous. Jones, and Lee Shoulders. I saw Hous. Jones come through the barber shop, came back in the back end, came through the partition wall that run east and west and came back in the back end and called Lee Shoulders, and Lee Shoulders came back there and he told him he wanted a pint of whisky, and Lee went to a box and got out the pint of whisky, right by this partition door and came back there and gave it to Hous. Jones and he put it in his pocket." It is unnecessary to further detail his evidence wherein he showed that he and Collins at once got down from their hiding place, went to appellant and took from his pocket the said bottle of liquor and identified it. Collins testified substantially the same thing. We can not see how else it could be shown to be material, or what was lacking to show its materiality. Ernest Cox v. State, not yet reported.

So that we think there can be no sort of doubt that the State in this case *proved* that the said alleged false testimony by appellant was mate-

rial. In other words, not only the indictment alleged the testimony of appellant was material but the State without doubt *proved* it was material.

2. Mr. Hancock, the foreman of the grand jury, testified: "At the time Houston Jones was before the grand jury they was investigating the case of Lee Shoulders down on Bonham Street, selling intoxicating liquors in Lamar County. I don't know who all the sales were made to, there was so many of them. There was an investigation made with reference to sales made to Dollie Carter by Lee Shoulders."

This testimony was given without any objection at the time by appellant as to the question he now urges in the court's refusal to sustain his motion to strike out certain testimony. After the evidence was all in appellant made a motion to strike out the following testimony by said Hancock, towit: "That while acting as foreman of the grand jury he had heard a witness say that Lee Shoulders had sold intoxicating liquors and that he could not remember the number of sales testified to by said witness before said grand jury." As a matter of fact, Mr. Hancock gave no such testimony as is claimed in said motion. The court, in approving the bill to overruling the motion to strike out, as stated, merely in effect approved the bill certifying that he overruled the motion. He did not certify thereby that Hancock had testified any such thing. Even if Hancock had so testified, it would not present reversible error, because appellant was not on trial for making a sale or buying liquor. If Shoulders had been on trial and the court had permitted such testimony against Shoulders, a different question would be presented. So that in no event does the bill present reversible error.

The motion is therefore overruled.

*Overruled.*