**TRUCK INSURANCE EXCHANGE,**
Petitioner,

v.

**Martha Wofford MICHLING et al.,**
Respondents.

No. A–9179.

Supreme Court of Texas.

Jan. 16, 1963.

Rehearing Denied Feb. 13, 1963.

Steinle & Aycock, Jourdanton, Gay & Meyers, Austin, for petitioner.

Lieck & Lieck, San Antonio, Ted Butler, Karnes City, J. Taylor Brite, Jourdanton, for respondents.

CULVER, Justice.

This suit was brought by Mrs. Martha Michling and other statutory beneficiaries to

recover death benefits provided by the Texas Workmen's Compensation Act. Judgment was rendered in favor of these beneficiaries by the trial court and the Court of Civil Appeals has affirmed. 358 S.W.2d 697.

The only evidence offered to prove that the deceased, Hugo Michling, sustained an accidental injury in the scope of his employment was that given by his wife, Mrs. Michling. She related that her husband left home to go to his place of work about 30 miles away on the morning of April 12, 1958, and at that time was apparently in good health; that she saw him when he got out of his car on his return home about 3:30 that afternoon and that "he sort of stumbled and caught himself and walked on up to the house and he said his head was hurting him terribly; he was batting his eyes and was very pale." She quoted him as saying that "he had hit his head on the bulldozer, the iron bar across the seat. It slipped off the hill and he hit his head." She also testified that he said "his head hurt so bad that he couldn't do anything else but had to put up the bulldozer and come home." Michling died at the hospital on May 11, 1958.

This case turns on the question of whether or not the foregoing testimony given by Mrs. Michling is admissible under the rule which admits res gestae utterances as an exception to the hearsay rule.

■ In the first place, while the workmen's compensation law is to be liberally construed and administered in favor of the employee, this does not mean that the rules of evidence generally in the workmen's compensation case are to be applied differently than they would be in cases arising under common law. Decisions of other jurisdictions support this view and we have found no Texas authorities to the contrary. Williams v. Jahncke Service, 217 La. 1078,

48 So.2d 93 (1950); Baxter v. Jordan, 158 Tenn. 471, 14 S.W.2d 717 (1929); Mason & Dixon Lines, Inc. v. Gregory, 206 Tenn. 525, 334 S.W.2d 939 (1960).[1] We therefore will discuss the admissibility of Mrs. Michling's testimony based on the foregoing assumption.

This then brings us to the question of what are the general rules governing the admission of hearsay statements as res gestae. Wigmore in his work on Evidence, 3rd Edition, § 1747, has the following to say:

"This general principle is based on the experience that, under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy (or, at least, as lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of the speaker's belief as to the facts just observed by him; and may therefore be received as testimony to those facts. * * *."

In § 1750 he sets out the requirements as follows:

"(a) Nature of the Occasion. There must be some *occurrence, startling enough* to produce this nervous excitement and render the utterance spontaneous and unreflecting. * * *."

Perry v. Industrial Accident Commission, 180 Cal. 497, 181 P. 788; Case of Pigeon, 216 Mass. 51, 102 N.E. 932.

---

1. Some states have provided by statute that in Workmen's Compensation cases the common law or statutory rules of evidence or procedure shall not govern.

"(b) Time of the Utterance. The utterance must have been *before there has been time to contrive and misrepresent, i. e.,* while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance. This limitation is in practice the subject of most of the rulings.

"It is to be observed that the statements *need not be strictly contemporaneous* with the exciting cause; they may be subsequent to it, provided there has not been time for the exciting influence to lose its sway and to be dissipated. * * *

"Furthermore, there can be *no definite and fixed limit* of time. Each case must depend upon its own circumstances.

"(c) Subject of the Utterance. The utterance must *relate to the circumstances of the occurrence preceding it.* * * *."

■ The very unusual circumstance in this case is that the hearsay statement of Mrs. Michling is the only evidence of the event which gives rise to the statement. A hearsay statement, as res gestae, is admitted as an exception to the hearsay rule because it is made under circumstances which raise a reasonable presumption that it is the spontaneous utterance of thought created by or springing out of the occurrence itself and, so to speak, becomes a part of the occurrence. But in this case the only evidence of the occurrence is the hearsay statement. Thus the Court of Civil Appeals is conceding credit to a narrative to prove the very circumstances from which it is said to derive its credit. Its trustworthiness, as to the happening of an accident, is presumed from the influence of the accident which its trustworthiness is taken to prove. Thus this proof, to use a trite expression, is attempting to lift itself by its own bootstraps. There is not any independent proof that Hugo Michling suffered any injury at approximately the time and place alleged. There appeared to be no iron bar across the bulldozer seat. There was no testimony from any other source that he was present at his place of employment on the day of the alleged injury. The time records of his employer indicated that Michling worked Friday, April 11th, until noon and that he did not work on the 12th. The operating records kept by his employer indicated that none of the tractors owned by the employer were in operation on that date.

The medical testimony is that Michling died of a cerebral hemorrhage resulting from a congenital weakness in one of the blood vessels in the brain and that such a hemorrhage may be precipitated by a cough, a strain, a blow to the head or may occur spontaneously. The fact that Michling died . from a cerebral hemorrhage does not necessarily indicate any accidental injury. There was no visible mark of any injury upon his head.

■ It is generally held that in passing upon the admissibility of a statement offered as a part of the res gestae the trial court has considerable discretion. Pilkenton v. Gulf,. C. & S. F. Ry. Co., 70 Tex. 226, 7 S.W. 805. (1888); Southern Surety Co. v. Weaver, 273 S.W. 838 (Tex.Com.App.1925); Skillern & Sons, Inc. v. Rosen, Tex., 359 S.W.2d. 298.

In Pacific Mutual Life Ins. Co. of California v. Schlakzug, 143 Tex. 264, 183 S.W. 2d 709 (1944) we held that whether or not a statement is admissible as res gestae is a question of law, which an appellate court has the same power to determine as it has. any other law question. We do not construe· that holding as necessarily running counter to the foregoing proposition. In Schlakzug there was clearly no indication that the statement attributed to the deceased was· made while laboring under stress or excitement produced by a sudden or startling· event. At any rate the discretion of the trial court does not extend to the admission of the testimony here for the reason that there is no proof otherwise of the occurrence of which the statement is asserted. to be a part.

As said by Professor Wigmore, for a statement to come within the doctrine of res gestae it must be made as a result of some startling occurrence which renders the utterance spontaneous and unreflecting but that is not to say that the startling occurrence itself may be proven by the statement alone. To paraphrase what is said in Schlakzug, supra, if this employee had not died and it became material to prove how the accidental injury was received this statement given here would not be admissible as res gestae. The decision as to whether the statement was res gestae does not depend on the after-effect of the employee's death. It was either res gestae or not at the time it was uttered.

■ For declarations to be admissible in evidence as part of the res gestae they must be made in connection with an act proven. In other words there must be evidence of an act itself admissible in the case independently of the declaration that accompanies it. Kalschinski v. Illinois Bankers Life Assur. Co., 311 Ill.App. 181, 35 N.E.2d 705; Staley v. Royal Pines Park, 202 N.C. 155, 162 S.E. 202.

As aptly said in 32 C.J.S. Evidence § 405:

"* * * It is proceeding in a circle to use the declarations as proof of facts necessary to constitute declarations part of the res gestae."

Our holding in American General Insurance Co. v. Coleman, 157 Tex. 377, 303 S.W. 2d 370, has some bearing on this point. In that case we held that the testimony of the doctor relating what the deceased Coleman told him, namely, that "he was going from Jacksonville to Houston, that he was driving a Brown & Root jeep, and that he was being transferred, going to be transferred to another job" was not admissible as a res gestae exception to the hearsay rule. We said that while the statement might have been made a short time after the accident and while the deceased was in extreme bodily pain and emotional shock, yet it was lacking in the requirement that it must tend to explain the exciting event.

Coleman's death resulted from injuries caused by the overturning of his automobile on the highway. The only question in that case was whether or not he was at the time of the accident acting in the course of his employment. The rejected testimony was offered for the purpose of establishing the affirmative of that question. While here Mrs. Michling's statement in part did relate to the alleged accident, nevertheless it was offered for the same purpose, namely, to prove that Michling sustained an accidental injury while engaged in the course of his employment. The principle involved, we think, is somewhat the same in both cases.

A case quite comparable on the facts, that of Beck v. National Surety Corp., 171 F.2d 862 (5th Cir., 1949) is authority for the proposition that in this type of situation there must be independent proof of the event to corroborate the hearsay evidence. Beck died of a cerebral hemorrhage. The alleged injury occurred about 3:30 or 4:00 in the afternoon when Beck strained himself while trying to close a valve. He did not complain to his fellow workers at that time nor later after work when three of them were drinking beer. At about 4:45 p. m. he tried to get in touch with his wife by calling his sister-in-law. It was not until around 6:30 p. m. that he said to his wife when she arrived home that he strained himself on the job and that he had a terrible headache and a terrible pain in his left side and leg, and that caused him to fall. However, at this time he was lying on the kitchen floor in a paralyzed, semi-conscious condition. He did not recognize his wife when she first arrived and could not stand or talk. He made his statement to her after he had regained consciousness. The 5th Circuit in upholding the trial court's exclusion of this testimony went on to say:

"There is absolutely no direct or substantial evidence in this case of any accidental injury sustained by the deceased while at work, except the statements alleged to have been made by him approximately two hours after his alleged injury, and at his home several

miles away from the plant. Such statements were manifestly incompetent as original proof of the principal fact in issue, i. e., whether the injury alleged was sustained in the course of employment, where there was no other proof of that fact to lend them support. * * * "

See also the following cases on which the 5th Circuit relied:

"Fitzpatrick v. Woodmen of the World Life Ins. Society, 238 Mo.App. 385, 179 S.W.2d 753; Huth v. Huth, 10 Tex.Civ.App. 184, 30 S.W. 240; Aetna Life Ins. Co. v. Ryan, 2 Cir., 255 F. 483; 32 C.J.S. Evidence, §§ 405–408, p. 23, Sec. 405."

The respondent and the Court of Civil Appeals principally rely on three Court of Civil Appeals cases—Texas Employers Ins. Ass'n v. Shifflette, Tex.Civ.App., 91 S.W.2d 787, wr. dism.; Atkinson v. United States Fidelity & Guaranty Co., Tex.Civ.App., 235 S.W.2d 509 (1950), ref. n. r. e.; Texas Employers Ins. Ass'n v. Noel, Tex.Civ.App., 269 S.W.2d 835 (1954), ref. n. r. e. In each of these cases the employee suffered an injury from which he subsequently died. In each case the employee told his wife how the accident happened and the wife was permitted to testify as to what her husband had said.

In the Shifflette case, it is undisputed that the employee was working on the day of the alleged accident and that he had to climb up the stairs to the fourth floor. Both of these facts were established by independent proof. The statement allowed as res gestae was: "My heart. I had—the manlift was out and I had to rush up those steps and I fell and it hurt me." The employee in this case had weakened and diseased heart muscles. He usually rode the elevator to the fourth floor where he worked. An unusual strain was placed on his heart by having to climb these steps, and thus the resulting injury came within the statute.

In the Atkinson case, the employee was called by his employer at 1:00 a. m. back to the plant where he was employed to repair a fan on a freezing unit. There was always an accummulation of ammonia gas in varying quantities around these units. When he returned home from work some three hours later there was, according to his wife, a strong odor of ammonia gas on his body. He became nauseated and his vomit gave forth a similar strong odor. His statement to his wife was that he has inhaled a lot of gas and that caused him to become ill. These facts constituted some independent proof of the basic event.

In the Noel case, the son of the employee found his father's tools attached to the mechanism of the well where his father had said he was hit by the tools while working. The employee had told his wife that he hurt himself while working on the well. Thus there was some independent proof of the event in this case.

It should be noted, however, that in none of these cases do the courts say that the testimony would have been admitted if it had not been for some facts constituting independent proof. They speak as though they were deciding its admissibility according to the well-established rules of res gestae. The distinction between the latter two cases and the one here may be regarded as somewhat tenuous but in our opinion the liberality shown therein should not be further extended.

Our holding in Wade v. Texas Employers' Ins. Ass'n, 150 Tex. 557, 244 S.W. 2d 197 (1951) cited by the Court of Civil Appeals, is not an authority for the proposition that the statement made by Michling to his wife is admissible as evidence. In that case the deceased employee was at work when he made the statement that "this gas is about to get me," which was admitted as a res gestae utterance. But two of his fellow employees testified that there was an unusual amount of chlorine gas present when they were at work which was produced from nearby operations in a chemical plant. The proof of the occurrence, namely, the presence of chlorine gas, which

gave rise to the statement, did not depend upon the statement of the deceased.

For the foregoing reasons the judgments of the trial court and of the Court of Civil Appeals are reversed and judgment here rendered in favor of petitioner, Truck Insurance Exchange.