**HANEY ELECTRIC COMPANY and Marion Willard Stewart, Appellants,**

v.

**Thomas M. HURST, Cheryl Hurst, and Howard Lane, Appellees.**

No. 20725.

Court of Civil Appeals of Texas, Dallas.

Aug. 17, 1981.

Rehearing Denied Sept. 24, 1981.

Richard Gary Thomas, Donald F. Lively, Maxwell, Bennett, Thomas, Carlton & Maxwell, Dallas, for appellants.

Charles H. Clark, Tyler, Morton A. Rudberg, Carter, Jones, Magee, Rudberg, Moss & Mayes, Dallas, for appellee.

Before GUITTARD, C. J., and CARVER and STEPHENS, JJ.

GUITTARD, Chief Justice.

This case arose from a three-vehicle collision on LBJ Freeway in Dallas in which one driver was killed and another seriously injured. Separate suits against the driver of the third vehicle and its corporate owner were consolidated and tried before a jury, which attributed the negligence 30% to the deceased driver, 30% to the injured driver, and 40% to the driver of defendants' vehicle. Judgment was rendered for each claimant for 70% of the damage, and defendants appeal. We reverse and remand for a new trial because of the exclusion of certain evidence, and we hold that each plaintiff's damages must be assessed by comparing it with the negligence attributed to the defendants, without considering the negligence attributed to the other plaintiff.

### 1. Res Gestae

Defendants' first point complains of the exclusion of an alleged res gestae statement of the driver of a fourth vehicle to the effect that his vehicle was also involved in the collision. We hold that the ruling was error and was probably prejudicial to defendants in that the excluded testimony tended to corroborate defendants' theory of how the collision occurred.

Plaintiffs' evidence tended to show that only three vehicles were involved in the collision. According to plaintiffs, all three were traveling in an easterly direction and in the same lane of traffic, with a Datsun stationwagon driven by the decedent Evelyn Lane in the lead. Mrs. Lane apparently drove over some metallic debris which became lodged under her car and affected her steering. According to plaintiffs, she brought the Datsun to a complete stop. Immediately to her rear was a United States postal truck driven by plaintiff Thomas Hurst. According to Hurst, he observed Mrs. Lane's difficulty and brought his truck to a stop twenty-five to thirty feet behind the Datsun. Then, according to plaintiffs' witnesses, a tractor-trailer truck operated by defendant Marion Stewart and owned by defendant Haney Electric Company struck the postal truck in the rear and knocked it violently against the Datsun. There was evidence that Hurst's postal truck brust into flame upon impact from the Haney truck and that massive damage was caused to the rear of the Datsun. Mrs. Lane suffered fatal burns, as well as other injuries, and Hurst also suffered burns.

Defendant Stewart testified that he was traveling in the second lane from the center strip, and the other vehicles, including the Datsun, the postal truck, and a light-colored

pickup truck, were traveling in the third lane. Stewart said that the Datsun suddenly slowed and began weaving, and then the postal truck closed in and "ran into the back of the Datsun with a fairly heavy force." After the impact, the two vehicles looked like their bumpers had locked because they stayed close together and remained in alignment. Immediately after the first impact, according to Stewart, the light-colored pickup looked like it hit the postal truck or "came extremely close to it." The Datsun and the postal truck then moved quickly into the second lane, and Stewart, who had started to pull over to the left, applied his brakes, but was unable to stop. His truck struck the postal truck heavily from the rear and then came to a stop in the first lane, next to the center strip. He got out of his truck and went to the Datsun, which was on fire, and attempted to open the door, but was unable to do so. Stewart testified that the light-colored pickup was parked near the scene after the impact.

The excluded testimony was that of defendants' witness, Joseph Horn. Horn testified without objection that he was traveling in the first lane. He said that the vehicle immediately in front of him in the third lane was a pickup truck and ahead of that was a postal truck. He did not see what was in front of the postal truck. He saw an impact between the pickup and the postal truck, and he immediately swerved to the right and stopped on the shoulder. He did not see the impact between the Haney truck and the other vehicles. He helped the postal driver out of his truck, and he also talked to the driver of the pickup, whom he described as "a young boy about twenty-two, twenty-three years old" and "very scared."

Defendants' counsel then attempted to elicit testimony from Horn concerning statements made to him at the scene by the driver of the pickup. Plaintiffs objected to the questions as leading and also on the ground of hearsay. The record does not show clearly whether the hearsay objection was sustained. The judge instructed counsel not to lead the witness and suggested

that he "repropound the question to him and get it clearer." Counsel's last attempt to elicit the testimony from the witness on the stand was leading, and the objection on that ground was sustained. The examination then proceeded on other matters and the witness was excused. Later, before defendants' closed their case, they offered the following from Horn's deposition:

QUESTION: Now you said something just a little bit ago about a boy in a pickup truck. Did you talk to somebody who was involved in the accident?

ANSWER: Yes, right after the accident I ran up to the back of the postal truck and that's before—I got there quick enough to where the fire really hadn't developed fully yet. And this boy, he was a tall slim boy I guess, say, twenty-one, twenty-two, twenty-three years old, and had on a white T-shirt. And he was shaking like a leaf. And I said, Well, what happened to you? You know, he was scared to death, I ain't kidding you. He was in worse shape than anybody. I said, What happened to you? And he said, Lord, I just barely got through there and got out of there. And I said, Well, where was you? And he said, I was right behind the Postal truck. And I said, Well, what did it do to you? Did it hurt you any? And he says, No, he says, I just barely clipped it. He said, When I saw the lights come on, he zipped to the right too and he just glanced off the back of the postal truck. And he told me all that happened to his truck was just a small little crease in the left front fender.

Plaintiff's counsel objected on the grounds that the testimony did not meet the res gestae test, that the answer was not responsive, and that the offer was an attempt to impeach defendants' own witness. The court then denied defendants' offer of the deposition testimony.

■ We conclude that the testimony was within the hearsay exception relating to spontaneous declarations made under the influence of an exciting event, as formulated by the supreme court in *Truck Insurance*

*Exchange v. Michling*, 364 S.W.2d 172, 173–75 (Tex.1963). Plaintiffs contend that the requirements of the rule are not met because defendants never established the exciting event by independent proof, as required by *Michling*. In this connection, plaintiffs insist that the exciting event in question was the alleged collision between the light-colored pickup and the postal truck, and since this event is not established by independent evidence, the alleged res gestae statement is not admissible to prove it.

We do not take such a narrow view of the exception. The reason for requiring an exciting event is to establish trustworthiness on the theory that nervous excitement excludes reasoned reflection and indicates that the utterance is a spontaneous and sincere response to the actual sensation and perceptions already produced by the external shock. *Michling, supra* at 173, quoting J. Wigmore, Evidence § 1747 (3d ed. 1940). The evidence here establishes beyond question an exciting event, which may or may not have included a collision between the light-colored pickup and the postal truck. Other evidence establishes a collision involving at least three vehicles resulting in fire and serious personal injuries. Horn's testimony, as well as Stewart's, tends to show that the light-colored pickup was traveling immediately behind the postal truck. Stewart testified that the pickup either struck the postal truck or narrowly missed it by swerving suddenly to the right, and Horn testified that he saw an impact between them. Thus, if the collision between the other vehicles did not provide the requisite excitement, Horn's testimony concerning the impact between the pickup and the postal truck is sufficient independent proof to establish the necessary exciting event.

■ Plaintiffs also argue that defendants never made a proper offer of Horn's testimony. We agree that the court properly sustained plaintiffs' objection to the leading questions when Horn was on the stand. The deposition testimony, however, presents a different question. That testimony was independently offered at the close of de-

fendants' evidence. In it the witness definitely related the young man's statements without any prompting by counsel. Though perhaps not admissible for impeachment, the deposition was not offered for that purpose. Contradiction of the deposition by what the witness said on the stand does not deprive the deposition of probative value because the inconsistency is a matter of credibility to be determined by the trier of the facts. *St. John v. Fitzgerald*, 281 S.W.2d 201, 207 (Tex.Civ.App.—Eastland 1955, no writ); *Lynch Oil Co. v. Shepard*, 242 S.W.2d 217, 218 (Tex.Civ.App.—Eastland 1951, writ ref'd). Consequently, we hold that the deposition testimony was admissible.

■ We recognize that the relevant testimony of the witness Horn in the deposition was not strictly responsive to the preceding question and that plaintiff objected to it on that ground at the trial. We hold, however, that unresponsive testimony is not inadmissible on that ground alone. *Adams v. State*, 156 Tex.Cr.R. 63, 225 S.W.2d 568, 570 (1949); *Jones v. State*, 76 Tex.Cr.R. 398, 174 S.W. 1071, 1075 (1915); *Dallas Transit Co. v. Hammer*, 390 S.W.2d 823, 828 (Tex.Civ. App.—Dallas 1965) *rev'd on other grounds*, 400 S.W.2d 885 (Tex.1966); *Oliver v. Williams*, 381 S.W.2d 703, 709 (Tex.Civ.App.—Corpus Christi 1964, no writ); 1 C. McCormick & R. Ray, Texas Law of Evidence § 582 (2d ed. 1956); 3 J. Wigmore, Evidence § 785 (Chadbourn rev. 1970).

■ In the course of a trial, unresponsive testimony may create problems because unresponsive statements are frequently inadmissible for other reasons and may be heard by the court or jury before either counsel has an opportunity to object. Unresponsive statements interfere with orderly development of the evidence by counsel and, if continued, may prolong the trial unduly. Consequently, the judge may properly admonish the witness to confine his testimony to the matters inquired about by counsel. In this context, if testimony otherwise admissible is excluded as unresponsive, counsel may elicit the same evidence by a proper question at a suitable time. The same con-

siderations do not apply to an unresponsive statement in an oral deposition. Presumably, each counsel will have the deposition before him at the trial and may make a timely objection to any testimony that is otherwise inadmissible. Counsel offering the testimony may choose a time suitable to his own plan of presenting evidence. Consequently, if the testimony is otherwise admissible, the fact that it was not elicited in response to a direct question is not reason to exclude it. Even if counsel have agreed that objections may be reserved until trial, as they did here, unresponsiveness of deposition testimony is not in itself a valid objection, according to the authorities above cited.[1]

■ In the present case, the question was closely related, at least in subject matter, to the testimony that followed. The question was whether the witness had talked to someone at the scene. The witness construed this question as asking for the content of the conversation, as witnesses are prone to do in such situations. After the witness had recited the conversation, no useful purpose would have been served by requiring counsel to ask, "What did the young may say?" Plaintiffs' real objection to the statement was the hearsay objection which was properly interposed at the trial, although, for reasons already stated, we hold that the objection was not well taken.

■ Plaintiffs further assert that no harm is established by exclusion of this testimony because it would have been merely cumulative of Horn's own testimony before the jury. We do not consider this testimony as cumulative. Horn was permitted to testify at the trial that he was behind both the postal truck and the light-colored pickup and saw an impact between

them, but this testimony alone appears to have had little weight, since plaintiffs took the position in the trial, as they do here, that there was no independent evidence of that impact. Stewart, who was in the cab of the Haney truck, was not certain whether the pickup had struck the postal truck or narrowly missed it. Certainly, the young driver himself was in the best position to determine whether or not his vehicle had come in contact with the postal truck, and thus his statement would have provided corroboration for Horn's testimony on this important point.

■ Neither can we agree with plaintiffs' theory that the error was harmless because any impact between the light-colored pickup and the postal truck could not have materially affected the collision between defendants' truck and the other vehicles. In this connection we note the testimony of defendants' expert witness to the effect that in reaching his opinion concerning the circumstances of the collision, he relied on statements that there was a light-colored or white vehicle that struck the right rear of the postal truck. He further stated that he found a white streak of paint and a dent in the right rear bumper of the postal truck that was not the result of the collision with the Haney truck, but rather came from a different angle. He could not say how long the paint or the dent had been on the vehicle. He further testified that the Datsun and the postal truck would be expected to continue straight ahead following their impact in the absence of any other forces, but if the right rear of the postal truck were struck by another vehicle, the vehicles would swerve or veer to the left and end up in the second lane. His inspection of the physical damage to the postal truck and the Haney truck indicated that

---

1. We have not overlooked rule 214 of the Texas Rules of Civil Procedure, which provides: "If any deposition shall contain any testimony not pertinent to the direct and cross-questions propounded, such matter shall be deemed surplusage, and may be stricken out by the court upon objection thereto." In our opinion, this rule does not authorize exclusion of deposition testimony that is relevant to the direct and cross-questions propounded on the ground that it is

not directly responsive to the immediately preceding question. Rather, it provides a procedure for striking improper unresponsive statements without affecting admissibility of the deposition in other respects. Here the conversation related by the witness was clearly relevant to the incident inquired about in the deposition, and plaintiffs' counsel had ample opportunity to cross examine.

something had caused the postal truck to go over from the third to the second lane. From this testimony it appears that evidence that the right rear of the postal truck had been struck by a vehicle other than the Haney truck was a key item of defendants' proof, and, consequently, the excluded statement of the young driver of the pickup could well have made a difference in which testimony the jury accepted. Perhaps a "glancing blow" by the pickup against the back of the postal truck would not have been sufficient to propel both the postal truck and the Datsun into the second lane, but that would have been a matter for the jury to determine. Without this evidence, the jury would have been likely to conclude that no factual basis existed for the opinion expressed by defendants' expert. Since the jury apparently rejected defendants' theory of how the collision occurred, we can only conclude that there is a probability, although not a certainty, that exclusion of this evidence resulted in an improper verdict and judgment. Consequently, the judgment must be reversed and the cause must be remanded for a new trial.

## 2. The Gasoline Can

Defendants also complain of the court's exclusion of evidence concerning the gasoline can found in the rear of the Datsun. We hold that exclusion of this evidence was error because it bears directly on the issue of causation.

Evidence before the jury established that a fire occurred, although there was a dispute as to whether it resulted from the collision of the Haney truck with the other vehicles or an earlier collision between the postal truck and the Datsun. The autopsy report introduced by plaintiffs showed that Mrs. Lane died as a result of "thermal burns," although it also showed other injuries, including broken ribs. A substantial portion of Hurst's injuries, also, was the result of burns. Before trial, the court sustained a motion in limine requesting that defendants be instructed not to offer any evidence before the jury on a gasoline can found inside Mrs. Lane's car. All of this

evidence was presented to the court and excluded; consequently, it appears in the record in the form of a bill of exception.

According to the testimony of defendants' expert witnesses and photographs offered by defendants, Mrs. Lane was carrying a can containing 1.5 to 3.5 gallons of gasoline. The damaged gasoline can was actually found in the car by one of these witnesses. The experts testified that their examination of the damaged vehicles showed that the fire began in the passenger compartment of the Datsun. The only possible source of the fire, they said, was the gasoline in the can because the fuel tank of the Datsun was not damaged or ruptured and the fire damage to the postal truck came from fire outside of the truck. Defendants' expert Friedberg testified that even a slight impact to the rear of the Datsun could have caused an explosion of the gasoline in the can. Defendants' other expert, Lynch, testified that such an explosion could have resulted in a fire totally demolishing the passenger compartment in less than two minutes and, in his opinion, gasoline from the can produced an internal and extremely rapid fire inside the vehicle.

■ We need not consider whether, as defendants insist, Mrs. Lane would have died of burns even if the Haney truck had not collided with the postal truck. It is enough to hold, as we do, that this evidence concerning the gasoline can was relevent on the issue of the proximate cause of Mrs. Lane's death and plaintiff Hurst's burn injuries because it was one of the links in the chain of causation. It may be true, as plaintiffs argue, that regardless of the source of the fire, evidence that the doors of the Datsun were jammed so as to frustrate attempts to rescue Mrs. Lane before the fire reached her supplies the necessary causal link between Stewart's negligence and Mrs. Lane's death. This, however, was a matter for the jury to determine. The particular chain of events leading to her death was material in establishing that causal relation and, consequently, defendants were entitled to present this evidence to the jury.

Neither are we impressed by plaintiffs' arguments that other witnesses present at the scene and called by defendants gave testimony inconsistent with the opinion of defendants' experts. To resolve conflicts and inconsistencies in the testimony of a witness or between witnesses is in the province of the jury. *Biggers v. Continental Bus System, Inc.*, 157 Tex. 351, 303 S.W.2d 359, 365 (1957). Thus the jury may accept a part of the testimony of any witness without accepting it all. *Clodfelter v. Martin*, 562 S.W.2d 491, 493 (Tex.Civ.App.— Corpus Christi 1977, no writ); *Williford v. Masten*, 521 S.W.2d 878, 890 (Tex.Civ.App. —Amarillo 1975, writ ref'd n.r.e.); *City of Center v. Roberts*, 469 S.W.2d 27, 30 (Tex. Civ.App.—Tyler 1971, writ ref'd n.r.e.). Likewise, a party is not bound by the testimony of his own witnesses in the sense that he may not introduce and rely on contrary testimony. *Englebrecht v. W. D. Brannan & Sons, Inc.*, 501 S.W.2d 707, 711 (Tex.Civ. App.—Amarillo 1973, no writ); *Texas Employers Insurance Ass'n v. Cecil*, 285 S.W.2d 462, 465 (Tex.Civ.App.—Eastland 1955, writ ref'd n.r.e.). Therefore, defendants were free to present to the jury any theory of the facts which the evidence would support, but, because of the erroneous exclusion of this relevant evidence, they were unable to present their theory to the jury. Under these circumstances, the error cannot be regarded as harmless. Consequently, on this ground also the judgment must be reversed.

### 3. General Negligence and Proximate Cause Issue

Defendants complain that special issue number one as submitted to the jury is "so general that it deprived defendants of the right to have the case decided on the basis of special issues." We hold that the generality of the issue is not in itself ground for reversal, but such generality raises problems that may be avoided by a more specific submission.

The issue and the jury's answers are as follows:

Did the negligence, if any, of any of the following persons proximately cause the occurrence in question? Answer "Yes" or "No" opposite each name:

| | | |
|---|---|---|
| A. | Marion Willard Stewart | Yes |
| B. | Thomas Monroe Hurst | Yes |
| C. | Evelyn Lane | Yes |

In your determination of Special Issue No. 1 as regards the conduct of Marion Willard Stewart you shall consider only the following elements, if any, as those terms as have been defined herein; proper lookout, excessive speed, failure to make timely application of brakes and failure to turn left or failure to turn right.

In your determination of Special Issue No. 1 as regards the conduct of Thomas Monroe Hurst you shall consider only the following elements, if any, as those terms have been defined herein; proper lookout, excessive speed, failure to timely apply brakes, failure to turn left or failure to turn right, and failure to maintain assured cleared distance.

In your determination of Special Issue No. 1 as regards the conduct of Evelyn Lane you shall consider only the following elements, if any, as those terms have been defined herein; proper lookout, failure to timely apply brakes, failure to signal, failure to turn left or failure to turn right, excessive speed, and failure to remove her vehicle from the freeway.

Defendants objected to the issue on the ground that "it is a general and global charge and it is insufficient to provide the jury with guidance in answering their questions." On appeal defendants present more detailed objections. They urge that submission of the two separate controlling issues of negligence and proximate cause in one issue was error. They argue that it is prejudicially multifarious because it is ambiguous in that the jury is not advised that they must find both negligence and proximate cause in order to establish actionable or contributory negligence on the part of any of the persons named in the issue. Thus, the defendants argue, the jury could, in effect, answer the issue "yes" with respect

to one party if they found that certain conduct of that party was negligence but not a proximate cause and that other conduct of the same party was a proximate cause but not negligence. More serious, in our view, is defendants' contention that the issue prevents them from making a proper presentation to the appellate court because any combination of the elements included in the instructions may have formed the basis of the jury's finding, and the court has no way of identifying the particular finding so as to determine whether exclusion of certain evidence, such as that concerning the gas can, was harmful. Similarly, defendants point out that they have no basis to contend that there is insufficient evidence to find defendant Stewart guilty of excessive speed because the generality of the issue prevents them from discovering whether or not the finding of Stewart's negligence rests on that or some other ground.

 We need not determine whether any of these objections to the issue would have been well taken if urged in the trial court because the objection made was not sufficient to embrace them. We recognize, however, that generality of the issue is no longer reversible error in itself. *Mobil Chemical Co. v. Bell,* 517 S.W.2d 245, 255 (Tex.1974); *Members Mutual Insurance Co. v. Muckelroy,* 523 S.W.2d 77, 81–82 (Tex. Civ.App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.); *Shasteen v. Mid-Continent Refrigerator Co.,* 517 S.W.2d 437 (Tex.Civ. App.—Dallas 1974, writ ref'd n.r.e.). Nevertheless, such a broad issue entails certain risks of prejudice, including some of those now pointed out by defendants. Also, if any of the elements of negligence included in the limiting instructions is without support in the evidence or if an affirmative finding in accordance with any of those instructions would be contrary to the great weight and preponderance of the evidence, the appellate court would be unable to say that inclusion of that element in the charge was harmless because of the jury's findings on other elements, since it would be impossible to determine what the jury had found on other elements. For this reason a rever-

sal may be required if any element of negligence is improperly submitted or improperly included in the instructions, or if any affirmative finding on any element would be against the great weight and preponderance of the evidence, provided a proper objection is made in the trial court.

Although approving broad form submissions in *Mobil Chemical, supra,* the supreme court has never disapproved separate submissions of specific acts of negligence. That form of submission has the advantage of obviating many claims of error because the particular findings made by the jury can be identified and many errors may be disregarded as immaterial in view of particular findings.

In light of the supreme court's opinion in *Brown v. American Transfer & Storage Co.,* 601 S.W.2d 931, 936–38 (Tex.1980) we do not specifically direct the form of the issue for the trial court to submit on another trial. We suggest, however, that in a case such as this, the sample charges in Texas Pattern Jury Charges, 1973 Cumulative Supplement 8–22, provide acceptable methods of submission under the 1973 amendment to the Texas Rules of Civil Procedure and involve none of the difficulties above pointed out.

### 4. Severance of Third-Party Claim

This litigation began as two separate suits by Hurst and Mrs. Lane's survivors. On September 13, 1979, almost a year after Hurst's suit was filed, the court granted defendants leave to file a third-party action for indemnity and contribution against Mrs. Lane's estate. No third-party action was filed until May 16, 1980, when defendants finally succeeded in obtaining the appointment of a temporary administrator. Meanwhile, the two suits had been consolidated and set for trial on April 28, 1980. Defendants moved for a continuance so that the third-party claim could be presented in the same suit, and plaintiffs moved to sever the third-party action. When the case was reached for trial on May 27, the court granted the motion to sever, overruled the

motion for continuance, and proceeded to trial. Defendants contend that this action was an abuse of discretion because Mrs. Lane's administrator was an indispensible party under rules 39 and 41 of the Texas Rules of Civil Procedure. They point out that the percentages of fault attributable by the jury to Mrs. Lane, Hurst and Stewart would affect the amount of contribution obtainable from Mrs. Lane's estate, and contend that it would be unjust to have such percentages determined by two different juries.

We do not agree that Mrs. Lane's administrator was an indispensible party in the sense that plaintiff Hurst was required to join him and that without his presence no valid judgment could be rendered between the original parties. See Clear Lake City Water Authority v. Clear Lakes Utilities Co., 549 S.W.2d 385, 390 (Tex.1977); Cooper v. Texas Gulf Industries, Inc., 513 S.W.2d 200, 204 (Tex.1974). The burden of bringing in the temporary administrator was on defendants, and their right to bring him in depends on their diligence. In view of our reversal on other grounds, we need not determine whether under the circumstances of the present case defendants have shown such diligence that the trial court abused its discretion in severing the third-party action and overruling defendants' motion for continuance. We are of the opinion, however, that when the case goes back for another trial, the court should consider a motion, if timely filed, to consolidate the third-party action with the present suit. Some of the considerations affecting such a consolidation are discussed in Dorsaneo and Robertson, *Comparative Negligence in Texas*, 10 Tex.Tech L.Rev. 933, 937–943, 957–959 (1979).

### 5. Mrs. Lane's Negligence in Carrying the Gasoline Can

Shortly before the trial defendants filed a pleading alleging that Mrs. Lane was negligent in carrying the gasoline can in her car. Plaintiffs' exceptions to the allegations were sustained, and defendants now complain of this ruling. Although we have held that evidence concerning the gasoline can was relevant on the issue of causation, we agree with plaintiffs that the negligence alleged is a circumstance enhancing damages rather than a circumstance causing the accident and, therefore, may not properly be relied on as a ground of contributory negligence. *Kerby v. Abilene Christian College*, 503 S.W.2d 526 (Tex. 1973). Consequently, we hold that the trial court did not err in sustaining plaintiffs' exceptions to these allegations.

### 6. Percentage of Negligence

Defendants contend that they are entitled to judgment that plaintiffs take nothing because the combined percentage of plaintiffs' negligence, as found by the jury, is more than the negligence of defendants. The jury attributed the negligence 30% to Mrs. Lane, 30% to plaintiff Hurst and 40% to defendant Stewart. The court rendered judgment for each plaintiff for 70% of his damages found by the jury on the theory that the comparative negligence scheme formulated by article 2212a of the Texas Revised Civil Statutes (Vernon Supp.1981) requires that each plaintiff's recovery should be diminished only by the percentage of negligence attributed to that plaintiff.

We do not agree that defendants are entitled to a take-nothing judgment. Neither do we agree that each plaintiff is entitled to 70% of his damages as found by the jury, since the jury also found that only 40% of the negligence should be attributed to defendant Stewart. Rather, we conclude that each plaintiff's claim must be considered as if it were a separate suit and the damages awarded in proportion to the amount of negligence of each plaintiff as compared to the negligence of the defendants, without considering the negligence of the other plaintiff.

This result, in our view, is required by Section 1 of article 2212a, which provides as follows:

> Section 1. Contributory negligence shall not bar recovery in an action by any person or party or the legal representative of any person or party to recover

damages for negligence resulting in death or injury to persons or property if such negligence is not greater than the negligence of the person or party or persons or parties against whom recovery is sought, but any damages allowed shall be diminished in proportion to the amount of negligence attributed to the person or party recovering.

Tex.Rev.Civ.Stat.Ann. art. 2212a (Vernon Supp.1981).

Since defendant Stewart and his employer must be considered only one party for the purpose of the statute, and no claim for contribution is before us, the statute allows recovery by each claimant against the single defendant notwithstanding contributory negligence "if such negligence is not greater than the negligence of the person or party ... against whom recovery is sought." Contributory negligence is not a complete bar to each plaintiff's recovery in this case because the negligence attributed to neither Mrs. Lane nor plaintiff Hurst has been found to be greater than the negligence of defendant Stewart. If this result did not follow, then the substantive rights of the parties would be materially affected by consolidation of multiple claims into one suit. We do not interpret the statute as permitting a defendant to obtain consolidation of several claims and then avoid liability on the ground that the combined negligence of all plaintiffs is greater than his own negligence. Whether multiple claims should be tried in one suit or several should be determined by considerations of judicial economy and convenience of the parties rather than by the potential effect on substantive rights.

For similar reasons, neither do we agree that the defendants here are liable for 70% of the damages to each plaintiff. By the reasoning adopted above, the claim of each plaintiff must be considered as if it were presented in a separate suit. Otherwise, the plaintiffs would be permitted to enhance their damages by the procedural device of joining their claims in the same suit.

There is nothing in the statute requiring that the percentages of negligence relevant to each plaintiff's claim as found by the jury must aggregate 100%. The scheme of the statute is to compare each plaintiff's negligence to the negligence of the party or parties from whom he seeks recovery, and if the plaintiff's negligence is not greater than theirs, the statute requires the recovery to be "diminished in *proportion* to the amount of negligence attributed to the person or party recovering" (Emphasis added) rather than according to the "percentage" of negligence. We interpret this provision to mean that the recovery is diminished in the proportion that plaintiff's negligence bears to the combined negligence of plaintiff and the party or parties against whom he seeks recovery. In this case the proportion by which each plaintiff's recovery is diminished is $^{30}/_{70}$ths; consequently, each plaintiff is entitled to recover $^{40}/_{70}$ths of his damages. These fractions may be stated as percentages, if necessary, of the total negligence relevant to each plaintiff's recovery, which, in either instance, should not include the negligence of the other plaintiff, from whom no recovery is sought.

The soundness of this approach is demonstrated by considering the implications of both plaintiffs' and defendants' theories, had the jury's findings been different. For example, if the jury had attributed the fault 5% to Hurst, 50% to Mrs. Lane, and 45% to Stewart, then, according to defendants' theory, Hurst would not be entitled to recover any amount, notwithstanding the finding that Stewart's fault was nine times that of Hurst. Elementary fairness, as well as the obvious intent of article 2212a, requires that these findings should entitle Hurst to recover $^{9}/_{10}$ths of his damages. On the other hand, if the jury had attributed the fault 10% to Hurst, 80% to Mrs. Lane, and 10% to Stewart, then, according to plaintiffs' theory, Hurst would be entitled to recover 90% of his damages, even though he and Stewart were equally negligent. In our view, such findings would entitle Hurst to recover 50% of his damages. Since neither plaintiff is "a person or party ... against whom recovery is sought," the negligence of one plaintiff is attributable neither to the other plaintiff nor to the de-

fendant in determining the recovery of the other plaintiff.

Defendants' theory assumes that the same 40% of the total negligence would have been attributed to defendant Stewart if only the negligence of one plaintiff had been submitted to the jury. On the other hand, plaintiffs' theory assumes that the same 30% of the total negligence would have been attributed to each plaintiff if only that plaintiff's negligence had been submitted. It is more reasonable to assume, as we do, that the jury's findings represent the proportions of negligence of each plaintiff as compared to that of the defendants, and that these proportions would have been substantially the same, if submitted to the same jury, whether or not the negligence of the other plaintiff had been submitted.[2]

Our holding is in accordance with Professor Dorsaneo's recommendation for the analogous case (which may be presented at another trial of this suit) in which the named defendants seek contribution from a third party not named as a defendant in the primary suit. Professor Dorsaneo recommends that under those circumstances the percentage of negligence of the third-party defendant should be submitted to the jury, but should be used only to compute the contribution shares. According to this recommendation, the plaintiff's recovery would be determined by comparing his percentage of negligence with that of the named defendants, even though the combined percentages of the plaintiff and the named defendants aggregate less than 100%. Dorsaneo and Robertson, *Comparative Negligence in Texas,* 10 Tex.Tech L. Rev. 9, §§ 959–63 (1979).[3]

Professor Dorsaneo's recommendation will simplify the problem that will arise if defendant's third-party action against Mrs. Lane's administrator is consolidated before the case is tried again. According to this recommendation, each plaintiff's recovery from the named defendants will be the same when the third person whose negligence is submitted is a third-party defendant against whom the named defendants assert a claim for contribution as it will be when the third person is a plaintiff in the same suit. In either event, presumably, the same result will be reached as if each plaintiff's suit were separately presented to the same jury. *See Board of County Comm'rs. v. Ridenour,* 623 P.2d 1174, 1191 (Wyo.1981). This solution is fully supported by the general scheme as well as the literal language of article 2212a.

Reversed and remanded.

---

**2.** The case might have been submitted to the jury as if the two suits had not been consolidated, with instructions that the negligence of each plaintiff and that of defendants should aggregate 100% without considering any negligence of the other plaintiffs. Although this method would obviate any of the assumptions above mentioned, it seems unnecessarily complex and confusing. Since neither party contends that the case should have been submitted in that manner, we need not decide whether that would be a preferable method.

**3.** Professor Robertson disagrees with this solution on the ground that a defendant ought not to be able to reduce the plaintiff's recovery by requiring the jury to consider the fault of an insolvent tortfeasor whom plaintiff has elected not to sue. *Id.* at 963–965. It is not clear, however, that the plaintiff's recovery would be so reduced, because there is no reason to assume that the percentage of plaintiff's negligence found by the jury would be constant regardless of the number of alleged tortfeasors whose negligence may be submitted, as pointed out above, and as these authors recognize elsewhere in their article. *Id.* at 940, n.33.